**UNITED STATES of America**

v.

**Tyrone I. MARSHALL, Appellant.**

**No. 74–1495.**

United States Court of Appeals, District of Columbia Circuit.

March 28, 1975.

---

On Appellant's Pro Se Motion for Appointment of Counsel (D.C. Criminal 267–73).

Tyrone I. Marshall, pro se, was on the motion for appellant.

Before BAZELON, Chief Judge, and ROBINSON and MacKINNON, Circuit Judges.

PER CURIAM:

Tyrone Marshall, his brother John, and Derek Holloway were all charged with assault with intent to kill while armed, armed robbery, robbery and assault and attempted murder of a Member of Congress, Senator John Stennis.[1] Holloway was granted immunity,[2] and John Marshall pleaded guilty. Tyrone Marshall, after four days of trial,[3] entered an *Alford* plea[4] to the full indictment, stating that while he had not committed the offenses charged, he recognized that the strength of the Government's case thus far presented minimized his chances of

1. Senator Stennis was robbed and shot twice in front of his home on Cumberland Street, N. W. around 7 P.M. on the evening of January 29, 1973 by two youths.

2. Immunity was granted under 18 U.S.C. §§ 6002, 6003. Holloway proved a recalcitrant witness, preferring incarceration to testimony against his confederates. His commitment was cut short by Marshall's decision to plead in mid-trial, thus obviating the necessity for Holloway's testimony.

3. Jury selection consumed September 24–26, September 28 and October 1, 1973, when the jury was sworn. The Government presented its case on October 2–5. On October 8, 1973, Marshall withdrew his plea of not guilty and entered a plea to the full indictment.

4. North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

acquittal.[5] This plea was not negotiated, and in fact was entered in mid-trial over the Government's strenuous objections. Mr. Marshall was repeatedly advised of his rights and exhaustively counselled by the judge to insure that he was aware of the consequences of his plea.[6] At sentencing, Judge Waddy declined to invoke the Youth Corrections Act and sentenced Marshall to several concurrent adult terms of 10–30 years.[7]

◼ The only potential issues for appeal are whether the trial judge committed reversible error by refusing to allow Marshall subsequently to withdraw his guilty plea and by declining to sentence him as a youth offender. Since in the context of this case both issues are frivolous, we deny the motion for appointment of counsel and *sua sponte* dismiss the appeal.[8]

*The guilty plea.* Marshall rested his motion to withdraw his guilty plea on two grounds. First, he alleged that he had been led to believe that no defendant would be granted immunity in exchange for his testimony and that the Government, by granting Derek Holloway such immunity denied him due process. But Marshall was not thus misled into pleading guilty since he was fully aware of the Holloway arrangement at the time the plea was entered.[9]

Marshall further claimed that robbery charges pending in Superior Court stemming from an offense occurring a few minutes after the Stennis shooting were to be dropped in exchange for his plea. The evidence of the record is that there were no negotiations preceding the plea and no promises inducing it.

◼ In Poole v. United States, 102 U.S.App.D.C. 71, 75, 250 F.2d 396, 400 (1957), we stated that "[l]eave to withdraw a guilty plea prior to sentencing should be freely allowed." That general statement was addressed to a factual situation where the defendant at arraignment, prior to trial, had been allowed to enter an uncounselled guilty plea to several felonies. Later when counsel was appointed prior to sentencing it developed there were some indications that defendant lacked mental capacity, but the trial judge nevertheless proceeded to impose sentence. The court had also limited the role of counsel as an advocate, placed on the defendant the burden of proving innocence or insanity as grounds for withdrawal of his plea, and misled counsel as to appellant's right to have the sentence set aside at a later date. Obviously, a case such as we have here where a guilty plea was voluntarily entered in the closing stages of a trial,

5. In the four days of trial, the Government produced more than twenty-five witnesses. At the District Court's request it made a proffer of the remainder of its case. While the victim made no identification, circumstantial evidence of Marshall's involvement was strong. Marshall stated to the court, "[Y]ou know, [they] got too much evidence against me" (Tr. 802).

6. The court asked the Government to make a proffer (Tr. 793–801). Then, he thoroughly examined the defendant (Tr. 788–93, 801–10), heard from his counsel (Tr. 780–84, 806–08), and finally accepted the plea (Tr. 810).

7. Judge Waddy had committed Marshall to Petersburg on December 14, 1973, for the 60-day evaluation period contemplated by 18 U.S.C. § 5010(e). There is evidence in the record that Marshall learned prior to his scheduled sentencing date on March 15, 1974, that the report would be unfavorable to a

Youth Act sentence. Hence, on sentencing day, Marshall through counsel moved to withdraw the guilty plea. The motion was taken under advisement and denied on the continued sentencing date of March 29, 1974. (*See* March 15, 1974, Transcript at 2–3 in which Marshall's attorney expresses his surprise at the decision to withdraw.)

8. For the court to appoint appellate counsel, the litigant must raise a non-frivolous issue. *See* Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958); United States v. McElya, 142 U.S.App.D.C. 38, 439 F.2d 548 (1970); *cf.* 18 U.S.C. § 1915 (1970).

9. Furthermore, differing treatment for co-defendants is a matter of prosecutorial discretion not reviewable in these circumstances by the Court of Appeals. Newman v. United States, 127 U.S.App.D.C. 263, 264, 382 F.2d 479, 480 (1967).

after strong evidence of guilt had been introduced, by a competently counselled defendant, stands on a different footing than *Poole.* Because the grounds on which Marshall bases his motion to withdraw his plea are wholly insubstantial and because his plea was voluntary when made, we find that the trial judge's refusal to permit withdrawal of the plea at the eleventh hour was not improper.[10]

*Sentencing.* While there is some ambiguity in the statement made by the District Court at sentencing,[11] taken as a whole, it complies with the requirements of *Dorszynski.*[12] Hence, the decision to

---

10. Marshall's motion to withdraw his guilty plea was silent as to his having learned prior to sentencing that his § 5010(e) report recommended an adult rather than a Youth Act term. *See* note 7, *supra.* However, mention of this fact would have provided no ground for granting his motion to withdraw. The mere fact that a defendant is disappointed with an unfavorable presentence recommendation is not a valid justification for setting aside a guilty plea. *High v. United States,* 110 U.S.App.D.C. 25, 29, 288 F.2d 427, 431, cert. denied, 366 U.S. 923, 81 S.Ct. 1350, 6 L.Ed.2d 383 (1961); *United States v. Needles,* 472 F.2d 652, 654 (2d Cir. 1973); *Sherman v. United States,* 383 F.2d 837, 840 (9th Cir. 1967). As the Supreme Court has stated in another context:

> A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Brady v. United States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970); *see also United States v. Lombardozzi,* 436 F.2d 878 (2d Cir. 1971).

Although Rule 32(d) of the Federal Rules of Criminal Procedure governs motions to withdraw guilty pleas, this Rule does not specifically set forth an exact standard to be invoked in determining whether the court should permit withdrawal of a plea prior to sentencing. However, the standard which has developed is that courts will permit such withdrawal if for any reason it seems "fair and just." *See Gearhart v. United States,* 106 U.S.App.D.C. 270, 273, 272 F.2d 499, 502 (1959), quoting *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). There is no absolute right to withdraw a guilty plea. *See United States v. Joslin,* 140 U.S.App.D.C. 252, 257, 434 F.2d 526, 531 (1970); *High v. United States,* 110 U.S.App.D.C. 25, 29, 288 F.2d 427, 431, cert. denied, 366 U.S. 923, 81 S.Ct. 1350, 6 L.Ed.2d 383 (1961). As stated by this court in *Everett v. United States,* 119 U.S.App.D.C. 60, 64, 336 F.2d 979, 983 (1964):

> Overwhelming authority holds, as has this court, that withdrawal of a guilty plea before sentencing is not an absolute right but a decision within the sound discretion of the trial court which will be reversed by an appellate court only for an abuse of that discretion.

11. The court stated that both the presentence report from the Probation Office and the § 5010(e) study recommended adult treatment for Marshall. The court noted that the Probation Officer listed five factors dictating this result—Marshall's lack of remorse, his prior history of assaultive behavior, his apparent lack of response to juvenile treatment, the short time between his last institutional release and the commission of this offense, and the seriousness of the offense (the unprovoked shooting of a 71-year-old man). The court then discussed the § 5010(e) study which recommended adult treatment because Marshall's previous exposure to correctional treatment had not modified his antisocial tendencies, because release was incompatible with the welfare of society and because he exhibited no desire to change. The court then concluded:

> This court finds based upon the recommendations of both the probation officer and the report of the Youth Center in response to the 5010(e) sentence that the Defendant *will not benefit* from a sentence under the Youth Act for treatment as a youth offender and the Court adopts the findings and recommendations of the Probation Office and of the Youth Center and makes the finding which I have now indicated, that *he will not receive significant benefit by treatment as* a youth offender.

Sentencing Tr. 40–41 (emphasis added).

12. *Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). After examining the legislative history of the Federal Youth Corrections Act in light of the traditional discretion of the sentencing judge, the Court held that "while an express finding of no benefit must be made on the record, the Act does not require that it be accompanied by supporting reasons." *Id.* Here there is both an explicit finding and supporting reasons. The problem is that the explicit finding in the first sentence is watered down by the later, somewhat more equivocal no benefit statement which, standing alone, might not satisfy *Dorszynski.* But a fair reading of the sentencing statement as a whole clearly discloses that *Dorszynski* was complied with and

impose an adult sentence does not raise a non-frivolous issue for appeal.

We accordingly deny the motion for appointment of counsel and dismiss the appeal.

Order accordingly.

that the sentencing judge considered the YCA and emphatically rejected it as non-beneficial to Marshall. 418 U.S. at 443, 94 S.Ct. 3042, 41 L.Ed.2d 855.