**UNITED STATES of America**

v.

**Winfield L. ROBERTS, a/k/a Win, Appellant.**

**No. 76-1668.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 16, 1977.

Decided Dec. 21, 1977.

---

**87.** F.R.Civ.P. 49(b).

1000

Roger E. Zuckerman, Washington, D. C., with whom Allan M. Palmer, Washington, D. C., was on the brief, for appellant.

Steven Gordon, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Joseph F. McSorley and Larry C. Willey, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before WRIGHT, ROBINSON and MacKINNON, Circuit Judges.

Opinion for the court filed by MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

Following a guilty plea, entered pursuant to an agreement with the Government, appellant Roberts was adjudged convicted of the crime of conspiracy. A week later, when the United States Attorney filed a strongly hostile presentencing memorandum, Roberts contended that the memorandum violated the plea agreement and moved to withdraw his plea. This motion was denied and he was subsequently given a sentence which closely approximated the maximum possible for his offense. He appeals therefrom, and we set the sentence and plea aside principally because the Government had not fully disclosed the details of the plea agreement at the court hearing as required by Rule 11, Federal Rules of Criminal Procedure.

I

Appellant Roberts and a co-defendant, Thornton, whose case was severed in pretrial proceedings, were arrested on September 5, 1975 and subsequently indicted. Count 1 of the indictment charged conspiracy to distribute heroin and to possess heroin with intent to distribute, 21 U.S.C. §§ 841(a), 846. Four other counts charged unlawful use of a communication facility (a telephone) to commit or facilitate the distribution of heroin, 21 U.S.C. §§ 841(a), 843(b).

Roberts initially pleaded not guilty and thereafter resisted several attempts by the prosecutor to arrive at a plea agreement before trial. However, on March 18, 1976, —the day the case was called for trial— Roberts was persuaded in a last minute bargaining session to agree to enter an *Alford* guilty plea,[1] *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162

---

1. The lower court held, following the hearing on the remand from this court of Roberts' motion to withdraw his guilty plea:

    Finally, rather than the plea being conditioned on such a promise [not to allocute for a substantial sentence], we are satisfied that the imminency of the trial date, the readiness of the Government for trial, the witnesses that the Government had on hand, and the strength, the overwhelming strength of the Government's case, are what caused the plea of guilty in this case.

    Tr. III, 155. The court held that Roberts knew, despite his attorney's misadvice (discussed *infra*), the true terms of the Government's offer (Tr. III, 13). We find that this conclusion is not adequately supported in the record.

    The last minute bargaining session was initiated by the Government (Tr. I, 3; III, 20, 55, 60) and differed from the Government's earlier negotiations in that the defendant participated in them at the request of the Government and with the consent of his counsel, *see* Tr. II, 39. The appellant and his counsel insist that the Government's final offer was accepted when all earlier ones had been rejected because in the former the U.S. Attorney promised not to request a "substantial sentence" if a plea were entered (Tr. II, 35–38; III, 6). The Government vigorously denies that any such offer was made (Tr. II, 44–52).

(1970).[2] Following the announcement that the accused had agreed to withdraw his not guilty plea and to plead guilty, the trial court, as required by Fed.R.Crim.P. 11, inquired into the circumstances surrounding the agreement and concluded, after questioning which at the time seemed in no way incomplete,[3] that there was a factual basis for the plea and that the plea was voluntary and in conformance with the Rule and all constitutional requirements.

The following excerpts from this Rule 11 hearing are relevant to the issues raised on this appeal:

THE COURT: Except for dismissing the remaining counts of the indictment at the time of sentence, has any promise of any kind been made to induce your plea of guilty?

THE DEFENDANT ROBERTS: No, it hasn't.

Tr. I,* 25–26.

THE COURT: All right. We'll take Mr. Roberts' plea to Count 1 of the indictment, which charges conspiracy.

DEPUTY CLERK: Yes, Your Honor.

MR. McSORLEY: Your Honor—

THE COURT: Just a minute.

MR. McSORLEY [Assistant U.S. Attorney]: Pardon me.

On the matter of promises, we did promise that we would have no objection to the defendant remaining on bond during sentencing, but that that would be a

decision of the Court. And I also did represent to both the defendant and Mr. Sacks that *the Government would reserve the right to file an allocution in this case.*

THE COURT: All right.

You just heard Mr. McSorley's further statement. Do you understand that the Government will not oppose your remaining on bond pending sentence, and also that the Government reserves the right to file a statement of allocution at the time of sentence? Do you understand that?

THE DEFENDANT ROBERTS: Yes.

Tr. I, 26–27 (emphasis added). The court then permitted withdrawal of the not guilty pleas and accepted Roberts' guilty plea to count 1 (the conspiracy count) (Tr. I, 27).

A week later, on March 25, 1976, the United States Attorney filed a strongly worded "Government Memorandum on Sentencing."[4] The representations made therein caused appellant and his counsel immediately to protest and to request that they be allowed to withdraw the plea on grounds that in recommending a severe sentence the Government had violated representations it made to induce appellant's plea, Fed.R.Crim.P. 32(d).[5] Roberts insisted that the prosecutor had promised to forego allocuting for a "substantial sentence" and that he had relied upon this representation in entering the guilty plea he had always

---

2. In *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court upheld the validity of a guilty plea where the accused was unwilling to admit participation in the crime, protested his innocence though the record contains strong evidence of guilt, but intelligently concluded that his interests required a guilty plea.

3. The questioning followed the usual formula required for Rule 11 proceedings. *Cf. United States v. Maggio,* 514 F.2d 80, 85 (5th Cir. 1975); *United States v. Truglio,* 493 F.2d 574, 577 (4th Cir. 1974).

* Tr. I refers to the transcript of March 18, 1976. Tr. II refers to transcripts of April 7 and April 15, 1976. Tr. III refers to the transcript of January 28, 1977.

4. This memorandum—10 pages in length with 40 pages of transcripts of intercepted telephone

calls appended—requested "stern and stiff punishment of a [narcotics] dealer." We also note, without comment, that immediately following the imposition of sentence, the U.S. Attorney wrote a letter requesting the revocation of Roberts' parole on his bank robbery conviction. While this request was clearly justified, it related to punishment, but was not referred to in the plea bargaining.

5. Rule 32(d), Fed.R.Crim.P. provides:

*Withdrawal of Plea of Guilty.* A motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

previously refused to enter. The U.S. Attorney denied that he ever made any such representations.[6] Roberts' attorney, however, gave insistent and unimpeached testimony that he had informed his client that such a promise had indeed been made and that this representation was crucial to Roberts' decision to plead guilty.

The court hearing held on April 7, 1976 on the motion to withdraw the guilty plea produced the following testimony significant to the outcome of this appeal:

MR. SACKS [Roberts' attorney, testifying as to the plea bargaining which occurred immediately prior to the Roberts' change of plea]:

Mr. McSorely [Assistant U.S. Attorney] spoke directly to the defendant in my presence, and he said that if you enter your plea, first, I will not waive my right to allocution, at which time the defendant turned to me and wanted me to explain what was meant by allocution. I then gave him the best explanation that I could, that the prosecutor was in effect saying that at the time of sentencing he would be able to address the Court as to the crime itself, and as to what he thought the sentence should be.

My further recollection is that Mr. McSorley stated to Mr. Roberts that if you enter this plea I will argue against probation, but I will not ask for a substantial sentence. He then left.

We then discussed the matter, and Mr. Roberts asked me to explain what he meant by arguing against probation. I told him that if I addressed the Court asking that the Court consider probation, he would argue against it, and I said that you're aware of the maximum penalty under the statute, and Mr. McSorely, in effect, is saying that he's going to argue for a sentence, but he isn't going to ask

the Court to impose a substantial one. That was my interpretation.

Tr. II, 34–35.

I would have never recommended to this defendant, or even consented as far as counsel was concerned to tell him to enter this plea, if I had been aware that a substantial sentence was going to be asked.[7]

Tr. II, 36.

MR. McSORLEY: Yes, Your Honor.

If I may, as I was just about to say, throughout the time that Mr. Sacks was representing Mr. Roberts, and the Government had made an offer in the case of a plea disposition, which is common where any defendant faces multiple charges, our offer throughout each and every negotiation was always the same, we would only take a plea to the lead count, we would retain the right to allocute, and we would forego, if there was a plea, the right to ask for the maximum imposition of sentence, but we would specifically retain the right to ask for a substantial sentence.

THE COURT: Was that point specifically brought out?

MR. McSORLEY: Specifically, Your Honor, and repeatedly and repeatedly, because as Your Honor knows, or at least from the Government's point of view, this was a strong case, we had 44 tapes that we were prepared to introduce, the bulk of which contained Mr. Roberts' voice. We had at least three witnesses who were prepared to identify his voice on tape.

Tr. II, 43–44.

I went into the jury room with Mr. Roberts and Mr. Sacks, the three of us were in there, and I reiterated then essentially what Mr. Sacks has said this morning, but there was one major difference. I specifically, and I have a crystal clear recollection of this, told the defend-

---

6. Tr. II, 47.

7. *See* Tr. II, 37: Roberts' counsel admitted: "I think that under the existing circumstances this defendant has a proper complaint against me, because if what Mr. McSorley contends, that a substantial sentence was mentioned, then I certainly have misadvised this client, and I think that he has a right to withdraw his plea."

ant that we would reserve the right to allocute.[8]

It was at that point that he asked Mr. Sacks about the meaning of an allocution and Mr. Sacks gave the explanation. Right after that I specifically told him we would not ask for the maximum period of time if he pled, but we are going to reserve the right to ask for a substantial sentence, and Mr. Roberts looked at me and he made the remark that I know you have your job to do.

I told him then that we would not have any objection to release on bond pending sentencing, that we would bring to the Court's attention whatever favorable attention the Court would care to give it, the fact that this was a plea and would save the Court and counsel time and money and effort, and that we would have no objection to release pending sentencing. Finally, that we would dismiss the remaining counts at the time of sentencing.

Now, that was about a four point bargain. They mulled it over some more after I left the room, and then we came in. A plea was put down on the record, and as I recall at the appropriate time Your Honor asked me were there any promises or threats or inducements, and I put those on the record. I remember specifically saying to the Court that the Government would specifically retain the right of allocution.[9] All of this was on the record. If there was any misunderstanding at that point about what it was that induced the plea, it was then and there, and counsel for the defendant himself should have brought the matter to the Court's attention. I was under no misapprehension as to what I had said. As I stand here today I have a crystal clear recollection.

Tr. II, 46–47–48. Concerning the file memorandum the U.S. Attorney had dictated "immediately after the plea," he testified:

In there I summarized what had happened, that there was a plea to the first count of the indictment, and in the fourth line it stated that the Government specifically reserved the right to file an allocution.[10] I represented to Mr. Sacks and his client that we would not ask for a maximum sentence, but that we would ask for a substantial period of time, and we would ask the Court to give favorable consideration to Roberts' plea of guilty.

Tr. II, 50. The U.S. Attorney further testified:

We did specifically tell him that we would not ask for the maximum. But on a case, Your Honor, where we felt it was extremely strong, we had a confession to back up what was said on the tapes, it is inconceivable to me that I ever could have told them or led them to believe that we would not have asked for a substantial period of time. If I had made that representation I am confident my file memoranda would have reflected it.

Tr. II, 52. This testimony has a slightly different tone from the U.S. Attorney's prior testimony. Instead of stating positively that he did *not* tell Roberts he would not ask for a substantial sentence, he seems to be arguing with himself that he could not have done that because he had too good a case. No mention was made of the fact that the court had suppressed substantial evidence against his co-defendant Thornton. It is also admitted that it was the Government which had initiated and pressed for a plea agreement.

In his closing statement Roberts' attorney commented:

I will tell the Court that on these four prior occasions Mr. McSorley said to me that we will allocute, we will ask for a substantial sentence if the defendant accepts the plea, and on those four occasions the defendant rejected the offer, except on this particular date that took place in the lawyers' lounge, and that was

---

**8.** Some of the misunderstanding may stem from the fact that McSorley treats the "right to allocate" as equivalent to stating "the right to allocute for a substantial sentence." *See, e. g.,* Tr. II, 44, 48.

**9.** *See* note 7, *supra.*

**10.** *Id.*

the thing, in my opinion anyway, that changed the whole situation. And I respectfully ask Your Honor to consider that.

Tr. II, 53–54.

Thereupon, the trial court immediately found against the defendant and denied his motion to withdraw his plea.[11]

A week later on April 15, 1976, the court imposed a sentence of 4 to 15 years' imprisonment, 3 years special parole, and a $5,000 fine.[12] Roberts then appealed, and—upon the uncontested motion of the Government—the case was remanded for further evidentiary hearings.

At this subsequent hearing, the trial court reaffirmed its earlier denial of Roberts' 32(d) motion, finding that he had not actually relied on the misadvice of his attorney in entering his plea.[13] Appellant's appeal to this court contends that his plea was induced by a good faith mistake and that the refusal of the court to permit Roberts to withdraw his plea amounted to reversible error.[14] We have examined the record exhaustively, but do not reach that particular point. Instead, we find other errors in the Government's handling of the matter which compel us to conclude that Roberts should be permitted to withdraw his plea.

## II

Our primary reason for reversing the lower court is that it is clear from the record that a material element of the plea agreement was not fully disclosed by the United States Attorney on March 18, 1976 during the Rule 11 proceedings in which the plea was accepted by the court. In this hearing the United States Attorney stated that he had reserved the right "to file an allocution," but there was no disclosure as to any details of that reservation. Subsequently, at the April 7th hearing on appellant's Rule 32(d) motion, when Roberts con-

tended that the sentencing memorandum violated the terms of the plea agreement, the United States Attorney, in defense of his contention that the Memorandum was no more severe than he had represented it would be during the plea bargaining, quickly testified concerning the Government's offer to Mr. Roberts as set forth above (see text, pp. 4 to 6). The principal significance of this testimony by Mr. McSorley lies in his insistence that he "*repeatedly and repeatedly*" (Tr. II, 44, emphasis added) told Roberts that he reserved the right to allocute "*for a substantial sentence*" (Tr. II, 43, 47, 52). The reservation of the right to allocute "*for a substantial period of time [i. e., sentence],*" was so important in his mind that he even specifically alluded to it in a file memorandum he dictated within 30 minutes following the entry of the plea. This memorandum stated, *inter alia*:

> The Government specifically reserved the right to file an allocution. I represented to Mr. Sacks and his client that we would not ask for a maximum sentence, but that we would ask for a substantial period of time, and we would ask the court to give favorable consideration to Roberts' plea of guilty.

The foregoing has some significance in that it separates the reservation of the right to file an allocution from the statement to Mr. Sacks and his client that the Government would request a "substantial sentence." This is some indication of what actually may have happened, *i. e.*, that the former statement was made to the court and the latter (allegedly) to Mr. Sacks and his client. It is also significant in that it again shows that McSorley tended to use the shorthand phrase "[reserve] the right to allocute" when he may have intended to convey that he intended to "reserve the right to allocute for a substantial sentence." McSorley subsequently admitted he had not included all the terms of the plea agree-

---

11. Tr. II, 54–55.

12. The maximum sentence for Roberts' crime is 15 years in prison, a fine of $25,000, and a three-year probationary period, 21 U.S.C. §§ 841(a), 846.

13. *See* note 1, *supra*.

14. *See* Appellant's Brief at iii.

ment in this memorandum, but rather only those aspects of which he desired to be reminded (Tr. III, 40–42). But comparing the above excerpt from the memorandum with the disclosure made by him at the Rule 11 hearing indicates that on the latter occasion he only disclosed to the court the representation as to the "allocution" and that he would ask the court to give "favorable consideration" to the guilty plea (Tr. I, 9). If the detail of the plea agreement concerning the substantial sentence, which was not disclosed, was of such importance that it was mentioned by him "repeatedly and repeatedly," and was included in his written memorandum, unquestionably it was of sufficient importance to disclose in open court at the Rule 11 hearing. Yet, not once during the Rule 11 inquiry by the court did the U.S. Attorney disclose this undeniably significant element of the agreement that on April 7th he was so certain he had mentioned "repeatedly and repeatedly" during the plea bargaining on March 18th.

■ The Federal Rules of Criminal Procedure are designed to guarantee that the trial judge be informed as to all the details of a plea agreement when he passes on the validity of a defendant's plea.[15] In fact, the 1975 amendments to Rule 11 were directed in large part to requiring the courts to insist that the full terms of plea bargains be brought to their attention on the record.[16]

The parties' failure fully to inform the court, coupled with the consequent uncertainties as to whether or not they understood the agreement they had reached, provides sufficient grounds to allow the defendant to withdraw his plea in this case where the motion to withdraw was made before sentencing.[17] And the disparity between the details of the plea bargain, as outlined by the Government to the court when the plea was entered and when the motion to withdraw the plea was heard, lends credence to Roberts' contention that the full details of the plea bargain were no more outlined to him in the final plea agreement than they were when the Government described the plea agreement to the court in the Rule 11 inquiry.

■ We do not reach the issue of whether or not the lower court was clearly erroneous in finding that Roberts had not relied on his attorney's misrepresentations of the Government's agreement in deciding to enter his *Alford* plea, because we premise our reversal on the Government's failure to comply with the requirement of Rule 11 that it disclose the full details of the plea agreement. That the court was subsequently made aware during the hearings on Roberts' 32(d) motion of the full details of the plea bargain also does not alter the fact that at the time Roberts entered his plea the procedural requirements of the Rule were not satisfied by full disclosure of the plea agreement to the court. The requirement of the Rule for full disclosure was intended, not only to permit the court to pass on the validity of the plea, but also to insure that all the terms of the agreement will be fully understood and agreed to by both parties. Under circumstances such as these, we are compelled to remand the case

---

15. *See, e. g., Bryan v. United States,* 492 F.2d 775, 781 (5 Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974); *United States v. Resnick,* 483 F.2d 354, 358 (5th Cir.), *cert. denied,* 414 U.S. 1008, 94 S.Ct. 370, 38 L.Ed.2d 246 (1973); *United States v. Williams,* 407 F.2d 940, 948 (4th Cir. 1969); *Scott v. United States,* 135 U.S.App.D.C. 377, 388, 419 F.2d 264, 275 (1969).

16. Federal Rules of Criminal Procedure Amendments Act of 1975, Pub.L. 94–64, 89 Stat. 370 (1975); *see* Note, *Rule 11 and Collateral Attack on Guilty Pleas,* 86 Yale L.J. 1395, 1400–1404 (1977).

17. *Cf. United States v. Cody,* 438 F.2d 287, 289 (8th Cir. 1971), *app. after remand,* 460 F.2d 34, *cert. denied,* 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972) (Where Rule 11 was not complied with, the defendant was entitled to plead anew, even when he sought to withdraw his plea only after sentencing, without need of showing "manifest injustice."). When a plea has been entered unconstitutionally or in violation of Rule 11, "It should go without saying that the standard is very lenient," *United States v. Barker,* 168 U.S.App.D.C. 312, 325, 514 F.2d 208, 221, *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975); *see also, McCarthy v. United States,* 394 U.S. 459, 463–64, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

in order that appellant may have his day in court, *see Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

### III

Although the Rule 11 proceedings in this case followed the usual litany for such inquiries, a cursory review of the testimony quoted *supra* suffices to reveal their inadequacy in this particular case. Not only did the Government fail to disclose the full terms of the plea agreement, but when the trial court asked the appellant if any promises had been made to induce his plea, he replied—incorrectly—that none had been.[18] It is undisputed that the Government also had agreed not to ask for a maximum sentence,[19] but neither party so informed the court at the time the plea was entered. The silence of Roberts on this point might well have been due to his feeling that this promise was insignificant, given the fact that he apparently understood that the Government would not ask for a substantial sentence of incarceration.[20] However, the parties are required to inform the trial judge of all the promises that have been made, not only those which they happen to consider important.[21]

The promise not to recommend a maximum sentence seems by no means to be of negligible significance. It would have been an important indication to the court as to how the Government in its negotiations with the accused had viewed the severity of the offense. But even if the parties considered it to be insignificant, the court should have been apprised of this promise so that it could properly assess the fairness and voluntariness of the plea agreement.[22] We do not suggest that there was any conscious effort at concealment by any of the parties; the mere fact that there was not a full disclosure of the plea agreement is sufficient basis for granting Roberts' presentence motion to withdraw his plea. There is no standard short of requiring total disclosure of all material details of plea agreements that can reliably guarantee that guilty pleas are knowing and voluntary and fully understood by the parties themselves.

The fact that the appellant himself in questioning by the court denied that there had been any prosecutorial promises to induce the plea does not estop him from seeking to withdraw his plea. The defendant's personal responses to Rule 11 inquiries are understandably likely to be inaccurate and somewhat confused,[23] and they do not foreclose further investigation into the full terms of the plea bargain.[24] Indeed, the prosecutor, as well as the defendant, has an affirmative obligation to elaborate any promise that had been made,[25] and the

**18.** *See* note 3, *supra.*

**19.** *See* Government's Brief at 9.

**20.** *Id.* at 23.

**21.** *See, e. g., Jones v. United States,* 423 F.2d 252 (9 Cir.), *cert. denied,* 400 U.S. 839, 91 S.Ct. 79, 27 L.Ed.2d 73 (1970); *cf. Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

**22.** *Jones v. United States, supra* note 21, 423 F.2d at 255; *Scott v. United States, supra* note 15, 135 U.S.App.D.C. at 388, 419 F.2d at 275.

**23.** Defendant's responses to judicial questioning at the Rule 11 hearing are notoriously unreliable, *see generally,* Note, *Plea Bargaining and the Transformation of the Criminal Process,* 90 Harv.L.Rev. 564, 574–75, 579 (1977).

**24.** *See Hilliard v. Beto,* 465 F.2d 829, 830–31 (5th Cir. 1972), *vacated,* 494 F.2d 35 (5 Cir. 1974); *Walters v. Harris,* 460 F.2d 988, 993 (4th Cir. 1972), *cert. denied, Wren v. U. S.,* 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262 (1973).

**25.** *See, e. g., Mawson v. United States,* 463 F.2d 29, 31 (1st Cir. 1972); *Karger v. United States,* 388 F.Supp. 595, 598 (D.Mass.1975). The Government is clearly wrong when it suggests that "If there was any misunderstanding at that point about what it was that induced the plea, it was then and there [at the time of the Rule 11 proceedings that] counsel for the defendant himself should have brought the matter to the Court's attention" (Tr. II, 48; *see also* Tr. III, 124–128). All parties have an obligation to disclose the plea bargain fully to the court. But the Government has a compelling duty fully to disclose its offer.

court itself is mandated to direct its examination to both parties.[26]

The inadequacy of the Government's disclosure in the Rule 11 proceedings, when coupled with the liberality with which the courts treat *presentence* motions to withdraw guilty pleas, force us to the conclusion that the denial of Roberts' 32(d) motion was erroneous. We are not faced with the question of whether a similar inadequacy in a Rule 11 inquiry would merit withdrawal of a guilty plea *after* sentencing, but we do hold, since Roberts' motion was made before sentencing, that the failure in open court to disclose fully material details of the plea agreement supplies more than that slight justification which is needed to allow the withdrawal of his plea.

■ Although after sentencing, a guilty plea may only be withdrawn in those "extraordinary cases" when the court determines that a manifest injustice would result from allowing the plea to stand,[27] before sentencing, the standard for withdrawal is much lower.[28] A defendant at no point has an absolute right to withdraw a guilty plea,[29] and permission to do so is within the sound discretion of the trial court.[30] In general the courts have held that presentence withdrawal should be "freely allowed" whenever there appears a "fair and just reason" for doing so.[31] Moreover, the courts look with particular favor on 32(d) motions made—as this one was—within a few days after the initial pleading.[32]

■ This is not a case where appellant desires to withdraw his plea simply because he received a more severe sentence or the Government allocution was more aggressive than he had hoped.[33] Rather, this case presents an instance of a possible failure in the meeting of the minds over the terms of the plea agreement.[34] Courts have been reluctant to allow withdrawal of guilty pleas on allegations of misunderstanding resulting from a defendant's purely "subjective" beliefs,[35] but whenever there is objective evidence that the defendant had been justifiably confused concerning the

**26.** *See, e. g., Raines v. United States,* 423 F.2d 526, 530 (4th Cir. 1970).

**27.** *See, e. g., United States v. Semel,* 347 F.2d 228 (4th Cir.), *cert. denied,* 382 U.S. 840, 86 S.Ct. 90, 15 L.Ed.2d 82 (1965); *United States v. Roland,* 318 F.2d 406, 409 (4th Cir. 1963).

**28.** *See, e. g., Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); *United States v. Barker, supra* note 17, 168 U.S.App.D.C. at 322–23, 514 F.2d at 218–19; *United States v. Tabory,* 462 F.2d 352, 354 (4th Cir. 1972); *United States v. Young,* 424 F.2d 1276, 1279 (3d Cir. 1970).

**29.** *United States v. McCoy,* 477 F.2d 550, 551 (5th Cir. 1973); *United States v. Arredondo,* 447 F.2d 976, 977 (5th Cir. 1971), *cert. denied,* 404 U.S. 1026, 92 S.Ct. 683, 30 L.Ed.2d 676 (1972).

**30.** *See, e. g., United States v. Morrow,* 537 F.2d 120, 146 (5th Cir.), *reh. denied,* 541 F.2d 282 (1976); *United States v. Simmons,* 497 F.2d 177, 178 (5th Cir. 1974), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 643 (1975); *United States v. Fragoso–Gastellum,* 456 F.2d 1287, 1288 (9th Cir.), *cert. denied,* 406 U.S. 970, 92 S.Ct. 2427, 32 L.Ed.2d 669 (1972).

**31.** *See, e. g., United States v. Read,* 534 F.2d 858, 859 (9th Cir. 1976); *United States v. Mar-*shall, 166 U.S.App.D.C. 412, 415 n. 10, 510 F.2d 792, 795 n. 10 (1975); *United States v. Joslin,* 140 U.S.App.D.C. 252, 257, 434 F.2d 526, 531 (1970).

**32.** *See, e. g., Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir. 1963).

**33.** *United States v. Marshall, supra* note 31, 166 U.S.App.D.C. at 415, 510 F.2d at 795; *United States v. Maggio, supra* note 3, 514 F.2d at 88; *United States ex rel. McGrath v. La Vallee,* 319 F.2d 308, 314 (2d Cir. 1963).

**34.** Such confusion traceable to positive testimony in the record, rather than merely the defendant's subjective expectations, would necessarily cast doubt on the legitimacy of a plea bargain under the modern "contractual approach" to such negotiations, *see generally,* Gallagher, *Judicial Participation in Plea Bargaining: A Search for New Standards,* 9 Harv. C.R. – C.L.L.Rev. 29, 45–49 (1974).

**35.** *See, e. g., United States v. Maggio, supra* note 3, 514 F.2d at 88; *Calabrese v. United States,* 507 F.2d 259, 260 (1st Cir. 1974); *see generally,* Note, *Guilty Plea Bargaining Compromises by Prosecutors to Secure Guilty Pleas,* 112 U.Pa.L.Rev. 865, 890 (1964).

plea bargain, withdrawal is usually permitted as a matter of course.[36]

Roberts' case for withdrawal is further advanced by the fact that he has never admitted his guilt to any of the charges against him. From the time of indictment, he has protested his innocence, and the *Alford* plea he ultimately was persuaded to enter, does not concede any wrongdoing on his part.[37] It is also significant that the Government stated that it considered this to be a proper case for an *Alford* plea.[38] The prevailing view in this and other circuits is that it is of considerable significance that the defendant credibly assert that he is in fact innocent of the charges against him in moving to withdraw a guilty plea.[39] Guilty pleas clearly must not be considered mere trifles, to be changed as the defendant's mood alters [40]; but the law's concern to safeguard the right of an accused to his day in court, given the circumstances of this case, outweighs any fear that allowing withdrawal of his plea will impair the institution of the guilty plea. In sum, Roberts is a prime candidate for a successful 32(d) motion. He presents a case where the courts look with extreme leniency on a request to withdraw a plea, and the deficiency in the Rule 11 disclosure proceedings more than satisfies the light burden which the appellant must bear to support such motion.

The requirement that all the details of the plea bargain must be disclosed in open court is based in part on an intent to prevent just such misunderstandings as appellant claims exist here. The discussions and proceedings at the trial level exhibit so many possible sources of misunderstanding that they serve as a useful example of why it is imperative to have the entirety of plea agreements disclosed in open court. For example, one potential for confusion in the negotiations below was in the very terms that the parties used. Although the lower court found that Roberts had not relied upon the misrepresentations of his attorney, it gave inadequate consideration to the vagueness of the terms in which the plea agreement was cast—an imprecision in language that would render the agreement suspect even had appellant and the U.S. Attorney not disagreed over its actual terms. Throughout the brief meeting with Roberts and his attorney—assuming *arguendo* that the prosecutor's memory of his colloquy with the defendant was correct—both parties relied on inherently ambiguous phrases in formulating the content of their final agreement. The Government made certain statements—the exact content of which is a matter of dispute—concerning whether or not they would request a "substantial sentence." [41] "Substantial," however, when referring to a sentence in a criminal case, is a relative term, the meaning of which varies according to one's perception of the gravity of the offense and the severity of various forms of punishment. There is no indication in the record that the parties made any attempt to elaborate its meaning in anything that approached specific terms.[42]

**36.** *See, e. g., United States ex rel. Curtis v. Zelker,* 466 F.2d 1092, 1098 (2d Cir. 1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973); *Bergen v. United States,* 145 F.2d 181, 187 (8th Cir. 1944).

**37.** The significance of an *Alford,* as opposed to an ordinary guilty plea, had been explained to Roberts at some length, Tr. III, 28, 67, 134–135.

**38.** Tr. I, 14.

**39.** *See, e. g., Everett v. United States,* 119 U.S. App.D.C. 60, 63–64, 336 F.2d 979, 982–83 (1964); *High v. United States,* 110 U.S.App. D.C. 25, 28, 288 F.2d 427, 430–31, *cert. denied,* 366 U.S. 923, 81 S.Ct. 1350, 6 L.Ed.2d 383 (1961); *compare United States v. Stayton,* 408 F.2d 559, 561 (3d Cir. 1969).

**40.** *See Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

**41.** *See* Tr. II, 34, 35, 36, 37, 50; Tr. III, 101–103, 111–112.

**42.** In passing, we also note the particular provisions of Fed.R.Crim.P. 11(e). This rule recognizes plea agreements between attorneys for the Government and attorneys for the defendants and with the defendant himself when acting pro se. Insofar as the terms of such agreements are concerned, it authorizes plea bargains in which "the attorney for the govern-

██ Similarly, the Government and Roberts evidently had a different understanding as to the meaning of the "allocution" over which they bargained. In criminal procedure "allocution" usually refers to the practice of making an oral statement in open court just prior to the imposition of sentence.[43] The appellant could reasonably have understood the Government's promise "to file an allocution at the time of sentence" (Tr. I, 27) to obligate the Government to insure that its various promises relating to the sentence would be brought—either by written document or oral presentation—to the court's attention "at the time of sentence."[44] The U.S. Attorney, on the other hand, apparently considered "allocution" to involve only a written memorandum filed with the court at any time prior to sentencing.[45] This difference in vocabu-

lary was important in the instant case, as the U.S. Attorney did not file an allocution "at the time of sentence," and in fact, the trial judge did not read the Government's Memorandum filed before sentencing.[46] Thus neither the court nor Roberts received the benefit at the time of sentencing of all the representations that the Government had agreed it would communicate in its allocution, e. g., that a guilty plea merited leniency. The Government, of course, was not the sole party at fault in this particular, but nevertheless the defendant was denied his right to have the allocution he had been promised put before the court at the time of sentencing—as it clearly would have been had the prosecutor addressed the court directly or "[filed] a statement of allocution *at the time of sentence.*" (Emphasis added.)[47]

ment will [inter alia] . . . (c) agree that a specific sentence is the appropriate disposition of the case." A reservation to allocute for a "substantial sentence" is hardly an agreement that a "specific sentence is the appropriate *disposition of the case.*"

**43.** The Oxford English Dictionary 236 (1933) defines "allocute" as "to address formally" or "to exhort." Allocution in the United States courts is presently controlled by the Federal Rules of Criminal Procedure:

(a) SENTENCE.

(1) *Imposition of Sentence.* Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment. The attorney for the government shall have an equivalent opportunity to speak to the court.

Fed.R.Crim.P. 32(a)(1) (1977). It appears that although Roberts' attorney thought that allocutions could be both written and oral, *see* Tr. II, 75 ("[T]he Government has given a *lengthy* allocution both in writing and orally . . ."), Roberts himself thought that an allocution was "when the DA speaks against the defendant, during sentencing." Tr. III, 135.

**44.** We do not agree with the Government or trial court that the reservation of the right *to allocute* assuredly conveyed to the defendant and his attorney that it was reserving the right *to allocute for a substantial sentence, see* Tr. II, 48, 54. We believe the court came closer to describing what allocution properly consists of when it said: "But normally they reserve the

right to allocute *in order to apprise the court of the full circumstances.*" Tr. II, 37 (emphasis added). These would vary with each case and could extend from allocuting for a maximum sentence to allocuting for probation if that were *the plea agreement.* There would be nothing unreasonable in Roberts' supposing that apprising the court of the full circumstances would involve arguing for some leniency. This would be consistent with the promise to give "favorable consideration" to the *guilty* plea.

**45.** Tr. III, 29. At the Rule 11 hearing the judge stated he [the U.S. Attorney] "reserves the right to file a statement of allocution at the time of sentence" Tr. I, 27. At sentencing, the U.S. Attorney stated: "Now Your Honor, we did submit a written allocution, and I will not take *the Court's time to rehash* what has been filed in that allocution . . . ." Tr. II, 66.

**46.** Tr. III, 61.

**47.** Indeed, the defendant might have felt cheated even if the court had read the written "allocution" since the promised statement concerning leniency due to Roberts for entering a guilty plea was compressed into a terse footnote that did not even personally refer to the defendant:

We believe that one who pleads guilty prior to trial is entitled to some favorable consideration because of savings of judicial economy. This does not mean, of course, that one who goes to trial should be penalized if convicted merely for exercising a constitutional perogative and we have never known any court to hold such a view.

## IV

The misunderstandings concerning the terms in which the plea agreement was cast and the alleged confusions as to the substantive content of the bargain could have been easily clarified, or this controversy obviated by a refusal to accept the plea, had the full agreement, as it was subsequently represented by the Government, been disclosed to the court at the time of the Rule 11 examination. Whenever the Rule 11 disclosure is incomplete, there is the possibility of a misunderstanding; and whenever this possibility is present and the defendant before sentencing credibly claims that it was a reality, the courts should be loathe to deny an accused his right to trial.

Allowing the appellant to replead will, in addition to vindicating his right to trial, have little or no deleterious effects. At the time the motion to withdraw the plea was argued the Government did not point to any significant prejudice to which it would be subjected were the defendant allowed to go to trial.[48] When the Government would suffer any prejudice by grant-

ing a Rule 32(d) motion, such as might have resulted from delaying the trial, the courts will usually exercise their discretion to deny withdrawal of a guilty plea,[49] but where such prejudice is absent or minimal, withdrawal is routinely permitted.[50]

In this case, indeed, there was so little inconvenience to the Government when Roberts sought to withdraw his plea, that it is hard to understand why it opposed Roberts' 32(d) motion in the first place.[51] The prosecutor's outline, in open court, of the Government's case indicates that it planned to rely primarily on wire-taps to prove its case; accordingly there would have been no problem of witness unavailability or vanishing evidence. While preparing for trial may be somewhat burdensome now some two years after the original guilty plea when appellant's original motion was made, all that allowing withdrawal of Roberts' plea would have entailed was rescheduling the trial and a delay of less than a month. The absence of any claimed prejudice to the Government in allowing Roberts to replead encourages us to look favor-

---

Government's Memorandum on Sentencing at 8 n. 7. The promise to enclose a comment urging "favorable consideration" of Roberts' guilty plea presents another example of the possibility of verbal misunderstanding in the proceedings below. The U.S. Attorney stated, in open court in the Rule 11 hearing before Roberts and defense counsel:

> That doesn't mean that I would be recommending any type of sentence of probation, but just as a general matter, if there would be a plea tendered, as the prosecutor I would make the representation to the Court, or request the Court to give *it* favorable consideration on the matter of sentencing.

Tr. I, 8–9 (emphasis added). This statement is open to the construction that the U.S. Attorney had promised to request the court to give favorable consideration to a "sentence of probation," *see* Brief for Appellant at 3. However, such interpretation would clearly be contrary to other statements made by the prosecutor. Tr. II, 34.

48. *Cf. United States v. Youpee,* 419 F.2d 1340, 1343 (9th Cir. 1969) ("F.R.Crim.P. Rule 32(d) provides for the withdrawal of a plea [of guilty] before sentence has been imposed, but such withdrawal can be made thereafter only to correct 'manifest injustice.' The roots of this rule are in justice and the concept of estoppel; the

government will generally have suffered little harm prior to sentencing and thus withdrawal of a plea of guilty should be liberally granted before final sentencing." (Citations omitted.))

49. See, *e. g., United States v. Truglio, supra* note 3, 493 F.2d at 578; *United States v. Vasquez-Velasco,* 471 F.2d 294, 295 (9th Cir.), cert. denied, 411 U.S. 970, 93 S.Ct. 2163, 36 L.Ed.2d 692 (1973); *United States v. Lombardozzi,* 436 F.2d 878, 881 (2d Cir.), cert. denied, 402 U.S. 908, 91 S.Ct. 1379, 28 L.Ed.2d 648 (1971).

50. *See, e. g., United States v. Harvey,* 463 F.2d 1022, 1023 (4th Cir. 1972), cert. denied, 411 U.S. 972, 93 S.Ct. 2162, 36 L.Ed.2d 696 (1973); *Woodward v. United States,* 426 F.2d 959, 964 (3d Cir. 1970).

51. The Government largely conceded this lack of prejudice in oral argument, while emphasizing that at this point in time it would be somewhat burdensome to prepare a case. However, the proper time frame in which to judge the merits of this appeal is at the time when appellant moved to withdraw his plea, not when he was forced to appeal in order to rectify the error committed by the refusal to grant the motion.

ably on his request [52], and when added to the other persuasive reasons to grant his 32(d) motion, it compels the conclusion that error was committed in denying his request to withdraw his plea.

## V

We are presented here with a case in which we do not have to reverse the trial court's fact-finding in order to arrive at our result. There was an inadequate Rule 11 disclosure by the Government of a material part of the plea bargain on which an *Alford* plea was entered with resulting prejudice to the defendant; there are objective indications of justifiable misunderstanding on the part of the appellant; and the Government at the time the request was made did not claim that it would be substantially prejudiced by allowing the withdrawal of the original plea. In such circumstances, it is hard to see what reason there could be for denying a presentence withdrawal motion. We are thus constrained to hold that there was an "abuse of discretion" by the trial court. That is the standard to be applied in reviewing the denial of Rule 32(d) motions by the trial court.[53]

Our reversal of the trial court does not in any way reflect upon the guilt or innocence of the appellant. Our judgment, however, necessarily does have the effect of reinstating the four counts that were dismissed at the time of sentencing. If Roberts eventually elects to stand trial and is convicted, there is nothing to prevent the court from imposing some other sentence more severe than that previously adjudged.[54]

It is, however, exactly because the alleged offenses are so serious and ordinarily do result in lengthy prison terms that the Government should have been exceptionally careful to insure that all aspects of the plea agreement were fully disclosed at the Rule 11 hearing. We recognize the circumstances that led to the hasty action by the parties in the present case, and that the trial judge and the United States Attorney were not the only ones at fault for the lack of disclosure of the details of the plea bargain. The determination of a Rule 32(d) motion does not, however, rest so much on issues of blame as on assessing the voluntary and knowing quality of the plea and protecting defendant's right to a jury trial.

As the procedures designed to ensure the adequate protection of the defendant's right to a jury trial were not followed when the terms of the plea agreement were required to be disclosed, we vacate the judgment of conviction and remand with instructions to allow appellant to withdraw his guilty plea. We order that the judgment of conviction on count one and the dismissal of the four remaining counts be vacated and the not guilty pleas to such counts be reinstated and that the case be remanded for trial on the entire indictment or such other action as the court may order.

*Judgment accordingly.*

---

**52.** It is generally held that even in the absence of prejudice to the Government, a defendant seeking to withdraw his guilty plea must present some specific reason for doing so, *see, e. g., Santobello v. New York,* 404 U.S. 257, 267–68, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (Marshall, J., concurring in part and dissenting in part). *See also United States v. Robinson,* 382 F.Supp. 157, 159 (D.C.Md.1974).

**53.** *United States v. Barker, supra* note 17, 168 U.S.App.D.C. at 324, 514 F.2d at 220; *United . States v. Vallejo,* 476 F.2d 667 (3d Cir.), *appeal*

*on remand,* 482 F.2d 616, (3 Cir.) *cert. denied,* 414 U.S. 830, 94 S.Ct. 61, 38 L.Ed.2d 65 (1973); *Byes v. United States,* 402 F.2d 492 (8th Cir. 1968), *cert. denied,* 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969).

**54.** It should also be considered that Roberts is on parole until 1983 from a bank robbery charge on which he was sentenced to concurrent 1–5 and 5–15 year terms. *See* Government Memorandum on Sentencing at 7.