HENRY, Circuit Judge,
dissenting.
In my view, the plea agreement at issue here required the government, at the sentencing hearing, to recommend that the court sentence Mr. Thomas at the low end of the applicable guideline range. By failing to make this recommendation at the time of sentencing, the government materially breached the plea agreement. I would therefore remand the case to the district court for re-sentencing and direct the government to make the required recommendation. My conclusion is based on a reading of United States v. Smith, 140 F.3d 1325 (10th Cir.1998), that differs from the majority’s, and on the application of standard principles of contract interpretation.

Smith

Unlike the majority, I believe that this circuit’s decision in Smith does not control our analysis. Two important facts distinguish Smith from the instant case.
First, although the majority does not mention it, twelve weeks passed in this case between the change of plea hearing (Rec vol. IV, Plea Hr’g, dated May 31, 2001) and the sentencing hearing (Rev. vol. V, Sentencing Hr’g, dated August 23, 2001). Although the district court recognized the government’s promise to make such recommendations at the change of plea hearing, at.the sentencing hearing the district court never expressly recognized that promise. With that much time having elapsed between the hearings, I am at least skeptical about whether the district court at the sentencing hearing recalled with precision what promises it had noted at the change of plea hearing. The case load of federal district court judges is heavy; I would not expect a judge to remember a part of a plea bargain negotiation that was discussed nearly three months earlier.
By contrast, in Smith, the district court at the sentencing hearing specifically “noted the statements in the PSR concerning the government’s recommendations.” Smith, 140 F.3d at 1327. Much as the government tries to imply otherwise — “the district court did note, in a sense, the government’s recommendations stat[ing]at the sentencing hearing that it had read the PSR ‘about three times,’ ” Aple’s Br. at 14-15 n. 6 — the majority fails to point to, and the record nowhere includes, a scintilla of specific evidence that the district court at the sentencing hearing acknowledged the recommendations.
*1172 Second, the panel in Smith construed different contractual language than the contract at issue here. In Smith, we considered the meaning of the noun “recommendation” as used in the parties’ plea bargain agreement. See Smith, 140 F.3d at 1327. Here, the dispute is over the meaning of the future tense verb in the plea agreement’s statement that the government “will recommend” the designated sentencing terms. Rec. vol. I, doc. 69, at 6 (Plea Agreement, dated May 31, 2001). While the phrase “will recommend” is obviously grammatically related to the language at issue in Smith, it is not identical. Thus, we must construe the plea agreement in this case to properly resolve this appeal.

Contract Principles

The majority states, and I agree, that “[plrinciples of contract law guide our analysis of the government’s obligations under the agreement,” Maj. Op. at 1169, and that “(1) we must examine the nature of the government’s promise; and (2) we evaluate this promise in light of the defendant’s reasonable understanding of the promise at the time the guilty plea was entered.” United States v. Brye, 146 F.3d 1207, 1210 (10th Cir.1998). However, citing to Smith, the majority unfortunately discards this framework, excerpting only one sentence of the relevant language in the plea agreement, and concluding that the language of the PSR is not “legally relevant.” Op. at 1171.
I disagree. To determine the nature of the government’s promise, we look to the terms of the agreement. Paragraph 13, subsections (a) — (c) of the plea agreement set forth “the terms and conditions of the agreement,” and state in full:
(a)I [Mr. Thomas] will enter a plea of guilty to count II of the Indictment and will withdraw all my motions associated with the instant matter. At the time of my sentencing, the government will move this court to dismiss Counts I and III of the Indictment.
(b) The government will recommend that I be given a 3 level reduction for acceptance of responsibility, if my offense level is sixteen (16) or greater, or a two level reduction for acceptance of responsibility if my offense level is less than sixteen (16), if I demonstrate an acceptance of responsibility for this offense by virtue of my conduct up to and including the time of sentencing. I understand that if, in the opinion of the United States Attorney’s office, I have not demonstrated an acceptance of responsibility for this offense, the government will not recommend the acceptance of responsibility reduction of the applicable guideline range. I further understand that if the government does not make a recommendation for acceptance of responsibility due to my failure to accept responsibility for this offense, it will NOT be a basis for me to withdraw my guilty plea. I understand that the Court need not follow the government’s recommendation.
(c) The government will recommend that I be sentenced at the low end of the applicable guideline range.
Plea Agreement, Rec. vol. I, doc. 69, at 12 (dated May 31, 2001) (emphasis supplied, except for “NOT”).
In interpreting that language, we must construe any ambiguities against the drafting party — here the government. See Brye, 146 F.3d at 1210. This bedrock principle of contract interpretation is recited by the majority, see Maj. Op. at 1169, but nowhere reappears in its analysis.
Applying that principle, I see two reasonable interpretations of the “terms and conditions” provisions of the plea agreement. First, these provisions can be read to state that, at the time of the sentencing hearing, the government must take each of *1173 the specified actions, (1) moving to dismiss counts I and III of the indictment, (2) recommending a downward adjustment in the offense level, and (3) recommending a sentence at the low end of the guideline range. This first interpretation is supported by the agreement’s use of the phrase “up to and including the time of sentencing” in subsection (b): that assessment of Mr. Thomas’s conduct clearly could not be completed before the sentencing hearing. On this reading of the contract, the government could only fulfill its promise by making a recommendation at sentencing. Second, and in the alternative, these provisions might be read as specifying a time for the recommendation specified in subsection (a) — to dismiss the two counts — but not specifying a time for the recommendations specified in subsections (b) and (c).
The ambiguity here is whether subsection (a)’s “[a]t the time of my sentencing” modifies only (a) or, instead, should be read to say that the government promised to make each of the recommendations referred to in §§ (a) — (c) at the time of the sentencing hearing. Given that ambiguity, we adopt the interpretation adverse to the government as the undisputed drafter of the plea agreement: the government had an affirmative obligation to take all three actions at the time of sentencing. This analysis flows directly from the application of ordinary rules of grammar and from traditional contract principles familiar to our court. See, e.g., Allison v. Bank One-Denver, 289 F.3d 1223, 1244 (10th Cir.2002) (Kelly, J.) (“The issue is at bottom a question of contract interpretation”). The analysis assuredly does not flow from some form of modern academic deconstruction of the plea agreement. See Black’s Law Dictionary 418 (7th ed.1999) (“deconstruction, n. In critical legal studies, a method of analyzing legal principles .... [a]lso termed trashing ”) (each emphasis in original).
Step two requires that we evaluate the government’s promise in light of the defendant’s reasonable understanding at the time the guilty plea was entered. See Brye, 146 F.3d at 1210. It was reasonable for Mr. Thomas, at the time of the making of the plea agreement, to have understood that the government would recommend a sentence at the lower end of the guideline range at the sentencing hearing. That is not to say that it was reasonable for Mr. Thomas to expect that the recommendation be done in a certain manner, be it orally or in writing, but that it was reasonable for him to expect that the recommendation would be given when the sentencing hearing took place.
The majority instead relies on Mr. Thomas’s failure to object at sentencing, concluding that his failure to object is “further evidence that his expectations of the government were satisfied.” Maj. Op. at 1171. However, such rebanee is problematic because, as the majority notes, we have already rejected an implied waiver rule that would penalize the defendant for failure to raise the issue at the sentencing hearing. See Maj. Op. at 1169; United States v. Peterson, 225 F.3d 1167, 1170 (10th Cir.2000) (holding that “a defendant does not waive his right to appeal a claim that the government has breached a plea agreement when he fails to object to the breach before the district court”).
Moreover, while it is true that Mr. Thomas could have communicated the government’s recommendation to the court, that speculation is immaterial to the question of whether the government had an obligation to make the promised recommendation and, whether it fulfilled that obligation. See, e.g., United States v. Roberts, 570 F.2d 999, 1010 (D.C.Cir.1977) (in holding that the government breached the plea agreement at issue, reasoning that although the government was not the sole *1174 party at fault, “nevertheless the defendant was denied his right to have the allocution he had been promised put before the court at the time of sentencing as it clearly would have had the prosecutor addressed the court directly or filed a statement ... at the time of sentence”) (internal quotations and citations omitted).

Breach

The government concedes that the government counsel at the sentencing hearing said literally nothing regarding the recommendation and the government does not point to, nor does the record include, any other verbal or written words in which it actually made the recommendation. Nor does the government argue that it was not required to make the recommendation because Mr. Thomas did not demonstrate his acceptance of responsibility. Instead, the government simply argues by citation to Smith that it satisfied its obligation under the plea agreement by including the me-morialization of the promise in the PSR, which the district court indicated it had reviewed prior to sentencing.
This argument is unpersuasive. A promise cannot be fulfilled merely by noting that the promise has been made and then doing nothing else. As I have noted, the plea agreement refers to a promise to commit a future act, stating that the government “will recommend” the designated terms of sentencing. Rec. vol. 1, doc. 69, at 6 (emphasis supplied). The PSR, on which the majority places critical importance in concluding that the government satisfied its obligations under the plea agreement, states only that “[t]he government also agreed to recommend the defendant be given a reduction in the offense level if he demonstrates said acceptance by virtue of his conduct up to and including the time of sentencing and to recommend he be sentenced at the low end of the applicable guideline range.” Rec. vol. VI, at 1-2.
Unlike some PSRs, the PSR in this case did not memorialize the government’s recommendation; instead, the PSR only noted the government’s conditional promise to recommend. And the district court at the change of plea hearing similarly only noted that the government “will” recommend sentencing at the low range of the guideline range. Further, there is no evidence that the plea agreement was attached to the PSR that the district court reviewed prior to sentencing. Moreover, even if the PSR was fresh in the judge’s mind at the sentencing hearing, the government’s silence could be interpreted to mean that the government was not satisfied with Mr. Thomas’s conduct up to and including the sentencing hearing. For all these reasons, I would hold that the government breached the plea agreement.

Materiality

As the Supreme Court has explained, because the government breached the plea agreement, “[w]e need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea.” Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). This is the rule because “the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding.” Id.See also United States v. Hayes, 946 F.2d 230, 233 (3d Cir.1991) (“The doctrine that the government must adhere to its bargain in the plea agreement is so fundamental that even though the government’s breach is inadvertent and the breach probably did not influence the judge in the sentence imposed, due process and equity require that the sentence be vacated.”) (internal quotation marks omitted) (emphasis supplied).
*1175 However, even if we were required to perform a separate materiality analysis, to my mind a broken promise by the government to recommend favorable sentencing terms, in this case that Mr. Thomas be sentenced at the low end of the applicable range, is clearly material. Government recommendations in favor of the defendant at least some of the time influence courts. By denying Mr. Thomas the promised recommendation, the government denied Mr. Thomas and the district court the opportunity to gain the benefit of the government’s recommendation to the court. Indeed, Mr. Thomas could have fared no worse: following the government’s breach, the district court, having not received the recommendation, sentenced Mr. Thomas to a prison term of 24 months, the absolute high end of the applicable range.

Remedy

Because an application of ordinary contract principles leads me to conclude that the government materially breached the agreement, I would remand for resentenc-ing and direct that government to recommend at sentencing that the district court sentence Mr. Thomas at the low end of the 18-24 month range. See Allen v. Hadden, 57 F.3d 1529, 1534 (10th Cir.1995) (“If the court finds that the government breached the plea agreement, the court must remand the case either for specific performance or withdrawal of the defendant’s guilty plea.”).

Conclusion

Today’s decision is a step in the wrong direction. Future defendants plea bargaining in this circuit will have less reason to trust the government’s promises.' As we recognized in United States v. Cooper, 70 F.3d 563, 567 (10th Cir.1995), “[f t is critical that the government stand by its agreements .... in order to encourage plea bargaining.” Further, requiring that the government follow through on promises that it makes to recommend certain sentencing terms relieves the already burdened district courts from having to elicit or acknowledge recommendations that the government has promised it “will” make. Most fundamentally, “prosecutorial conduct should set the ethical standard; minimally it should comply with the law.” Id. (emphasis supplied). Because I believe that the government failed to comply with the legal obligation it assumed in entering into a plea agreement with Mr. Thomas, I respectfully dissent.