**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sterling Keith ROGERS, Defendant-Appellant.**

**No. 74–1252.**

United States Court of Appeals, Fifth Circuit.

Nov. 27, 1974.

Rehearing and Rehearing En Banc Denied Feb. 21, 1975.

Malcolm McGregor, Philip T. Cole, El Paso, Tex., for defendant-appellant.

William S. Sessions, U. S. Atty., Ronald Ederer, Asst. U. S. Atty., San Antonio, Tex., William B. Hardie, Jr., Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

DYER, Circuit Judge:

Rogers appeals from his jury conviction for (1) conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C.A. § 846, (2) possession with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1), (3) using a communication facility in violation of 21 U.S.C.A. § 843, and (4) conspiracy to import marijuana in violation of 21 U. S.C.A. § 903.[1] His arguable contentions on appeal are that there was an illegal search and seizure; that admissions used against him at trial were taken in violation of *Miranda*; that it was error to deny his motion for acquittal on Courts 1, 3 and 4; that his requested instructions should have been granted; and finally that the sentence imposed was based upon impermissible standards. We are unpersuaded that Rogers' trial was infected by reversible error, but because his sentence may have been based upon improper considerations, we vacate it and remand for resentencing.

At six-thirty on a Sunday morning as dawn was breaking, border patrolman Thompson of the Immigration Service was driving his marked vehicle in a sparsely settled area on a gravel road parallel with and about 300 yards from the Rio Grande River, which was then either dry or fordable. He observed a pickup truck with a shell camper approaching him without lights. Thompson pulled over and stopped on the side of the road because the camper was coming from a known river crossing. It was extremely unusual for such a vehicle to be in this vicinity at such an early time on Sunday morning. Thompson was also aware that similar vehicles were often used to smuggle aliens, who were picked up at the river in the early morning or late evening hours. As the camper came closer and the driver apparently realized that the parked auto was a patrol car (Thompson's vehicle had a light bar and red lights on top and "United States Border Patrol" lettering on the sides), the driver of the camper turned on his headlights and accelerated. As Thompson turned the patrol car around the camper left him at a high rate of speed trying to get away. Thompson turned on his headlights, red lights and siren and pursued the camper at speeds over 100 miles per hour. After some distance the camper left the road, traversed a cotton field, broke through a barbed wire fence, continued on at a high rate of speed through another cotton field and then came out on a road again. During this rough ride large clear plastic sacks, believed to contain marijuana, bounced up in the back of the camper and were clearly visible to Thompson.

Having gained the narrow paved road Thompson made several attempts to pass the camper to stop it but each time the camper was caused to fishtail across the road to prevent Thompson from coming alongside. Finally Thompson discharged his firearm in the air and the camper immediately made an abrupt turn off the road. A second shot was fired and the camper stopped between two labor houses on a farm. Rogers hastily fled the vehicle and ran into a cotton field. He was apprehended lying face down between rows of cotton. Thompson handcuffed Rogers and explained his *Miranda* rights to him. Rogers was noncommunicative. They walked back to the camper, where Thompson read *Miranda* warnings to Rogers from a card and then searched him. Rogers indicated that he understood his rights but that he would not waive them.

---

1. Rogers was found not guilty of importing marijuana in violation of 21 U.S.C.A. §§ 952(a) and 960(a)(1).

A search of the camper disclosed a scanner hooked up to run off a plug in the cigarette lighter, a walkie-talkie, battery pack, an extra antenna, and 427 pounds of marijuana.

## THE SEARCH AND SEIZURE

The thrust of Rogers' argument that the marijuana was the fruit of an illegal search is that the search was neither a border search nor its functional equivalent, Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596, and was made without a warrant, consent, or probable cause. We disagree. In United States v. Steinkoenig, 5 Cir. 1973, 487 F.2d 225, 227, we pointed out that:

> It is true that the vehicle searched had not crossed a border, but this Circuit has decided that a border crossing is not the *sine qua non* of a valid border search. In United States v. Hill, 5 Cir. 1970, 430 F.2d 129, the court adopted the Second Circuit rule that ". . . when an individual has direct contact with a border area, or an individual's movements are reasonably related to the border area, that individual is a member of the class of persons that a customs officer may, if his suspicions are aroused, stop and search while the individual is still within the border area. 430 F.2d 129 at 131."

The search does not lose its border status because Rogers refused to stop 300 yards from the Rio Grande and had to be pursued for some miles from the border. Here the search occurred immediately after Rogers' vehicle was brought to a stop after a wild chase that followed the border area contact. We entertain no doubt that these circumstances create a nexus with the border that is sufficient to make this a border search. This being so probable cause is not required. It suffices if the customs agent entertained a reasonable suspicion. *Steinkoenig, supra,* 487 F.2d at 228. Without recanvassing in detail what transpired from the initial contact on a gravel road close to the river, in a desolate area, at dawn on a Sunday morning, through the chase, to the capture, we conclude that the agent had reasonable suspicion to search the camper. As we observed in *Steinkoenig,* and in like circumstances in United States v. Henriquez, 5 Cir. 1973, 483 F.2d 65, cert. denied sub nom. Buckholz v. United States, 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553, *Almeida-Sanchez* is inapposite because of the strong nexus with the border and the agent's reasonable suspicion of wrongdoing in this case.

## ROGERS' ADMISSIONS

When Special Agent Baden arrived upon the scene where the chase had concluded he instructed another agent to take the camper to the Drug Enforcement office. Rogers spontaneously remarked that the vehicle would not run because he had burned out the engine. Baden then told Rogers that he knew that agent Thompson had explained his rights to him but he nevertheless repeated them to Rogers. During the drive to El Paso, Rogers admitted that he had purchased the radio and had asked for police crystals for the area. Rogers also admitted that the other walkie-talkie was in the area but that "they must have gotten paranoid and split." During the conversation Rogers said he owned the camper and had driven it down to the levee where some Mexicans whom he did not know loaded it with marijuana. When Rogers was asked who else was involved with him he refused to say any more.

Later, at the Drug Enforcement office, when agent Compton weighed the marijuana and found that it totaled 427 pounds, Rogers was again warned of his rights and stated that he wasn't supposed to have gotten any marijuana, that he was stupid for picking it up, but that he did obtain it.

At trial, objection was made to these statements on the ground that Rogers had not knowingly and intelligently waived the constitutional rights of

which he had been warned. The objections were overruled and the statements were admitted.

■ We find no merit in the contention that the voluntary waiver requirements of *Miranda* were not met. It is undisputed that before Rogers made the statements during the drive to El Paso, he had been given *Miranda* warnings on three separate occasions; twice by Patrolman Thompson, when he was first taken into custody in the cotton field and again after he had been taken back to the camper, and a third time by Agent Baden before he drove Rogers to El Paso. Before Rogers said anything at the Drug Enforcement office he was, for the fourth time, advised of his rights. It is also undisputed that Rogers acknowledged that he understood his rights.

In United States v. Montos, 5 Cir. 1970, 421 F.2d 215, 224, cert. denied, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532, we elaborated on the proper construction of *Miranda* in these circumstances:

> When a defendant warned of his rights makes statements without a lawyer present, the prosecution may use these statements at trial only if it sustains its "heavy burden" of demonstrating that the defendant "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." . . . All that the prosecution must show is that the defendant was effectively advised of his rights and that he then intelligently and understandingly declined to exercise them. *See* Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962).

With this guideline, we found in United States v. Guzman-Guzman, 5 Cir. 1974, 488 F.2d 965, that

> the Government met its "heavy burden" by producing three witnesses who testified that the defendant was twice advised of his rights and that he twice acknowledged that he understood them. . . . as in *Montos*,

the [four] sets of warnings, admittedly understood, "effectively advised [the defendant] of his rights and . . . he then intelligently and understandingly declined to exercise them," . . . In these circumstances, the admission of such a statement constitutes no affront to *Miranda.*

*Id.* at 966.

### MOTION FOR ACQUITTAL ON COUNTS 1, 3 and 4

■ We need not tarry long to dispose of Rogers' argument that there was insufficient evidence to establish his guilt of the offenses charged in Count 1, a conspiracy to possess marijuana with intent to distribute; Count 3, the use of communications equipment to facilitate the importation of marijuana; and Count 4, a conspiracy to import marijuana. Rogers asserts that there was no extrinsic evidence to corroborate the corpus delecti, and, in any event, the statements were insufficient to prove a conspiracy.

It would be inutile to recapitulate the evidence we have recited *in extenso.* It is enough to say there was an abundance of evidence to corroborate Rogers' admissions and to establish their trustworthiness. Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; Hoover v. Beto, 5 Cir. 1972, 467 F.2d 516, cert. denied, 409 U.S. 1086, 93 S.Ct. 703, 34 L.Ed.2d 673; United States v. Allen, 9 Cir. 1972, 455 F.2d 509. Taking the view most favorable to the Government, Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, on a motion for judgment of acquittal "the test is whether . . . a reasonably-minded jury might accept the relevant evidence as adequate to support a conclusion of the defendant's guilt beyond a reasonable doubt." United States v. Knox, 5 Cir. 1972, 458 F.2d 612, 615, cert. denied, 409 U.S. 845, 93 S.Ct. 48, 34 L.Ed.2d 85. Under this standard the trial court properly submitted the case to the jury on all counts.

## DEFENDANT'S REQUESTED INSTRUCTIONS

■ Rogers' complaint that probable cause to conduct a search of his camper was a fact issue to be determined by the jury, and that it was error to deny his requested charge posing such an issue, is frivolous. Probable cause and reasonable suspicion are legal issues to be determined by the court for the purpose of admitting or suppressing evidence. Obviously they are not issues to be determined by a jury at the conclusion of a trial for the purpose of sorting out evidence to determine what evidence was admissible.

■■ Equally without merit is Rogers' contention that the district court erred in refusing to charge, as requested in connection with Count 2, that he could be found guilty of simple possession of marijuana, a lesser included offense of possession with intent to distribute. At the time of his arrest Rogers had in his possession 427 pounds of marijuana, worth somewhere between $30,000 and $60,000 on the street. The vast amount of marijuana here involved, the sale of which would have been enormously profitable, strongly supports an inference that Rogers did not intend to use it himself but intended to sell it. United States v. Nocerino, 2 Cir. 1973, 474 F.2d 993, cert. denied, 412 U.S. 942, 93 S.Ct. 2785, 37 L.Ed.2d 402; United States v. Ortiz, 10 Cir. 1971, 445 F.2d 1100, cert. denied, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545; see also United States v. Fonseca, 5 Cir. 1974, 490 F.2d 464; United States v. Polite, 5 Cir. 1974, 489 F.2d 679. In any event the Court's refusal to instruct on simple possession was not error since "[a] lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a *disputed* factual element which is not required for conviction of the lesser-included offense." Sansone v. United States, 1965, 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882. (emphasis supplied). Absent some evidence to counter the strong inference of intent to distribute, the issue is not elevated to a truly disputed one.

## SENTENCING

■ The court made an express finding in the record that Rogers would not benefit from treatment under the Youth Correction Act, 18 U.S.C.A. § 5010(b) or (c),[2] and imposed an aggregate sentence of 15 years' imprisonment, followed by a 9 years' special parole term. At the time of sentence the court clearly indicated its distaste for Rogers' lack of cooperation in identifying his confederates, especially in the face of the jury's finding that a conspiracy existed. It gave Rogers to understand that the first step towards rehabilitation, in its opinion, was to cooperate with the authorities in bringing others involved in the conspiracy to justice, and unless and until Rogers indicated "substantial, material, productive cooperation" the court would not consider a lesser sentence.

Rogers urges us to review the sentences meted out since, although they are within the statutory limits, they are harsher than would have been otherwise imposed simply because he insisted upon his constitutional right to remain silent. We, of course, cannot modify the sentence, but if indeed Rogers "paid a judicially imposed penalty for exercising his constitutionally guaranteed rights," we are called upon to exercise our supervisory powers. Thomas v. United States, 5 Cir. 1966, 368 F.2d 941, 946. As we recently explained in United States v. Hartford, 5 Cir. 1974, 489 F.2d 652, 654:

> Appellate modification of a statutorily-authorized sentence . . . is an entirely different matter than the

---

2. Despite Rogers' contentions to the contrary, the district court's express finding satisfied the requirements of § 5010(d) of the Act, Dorszynski v. United States, 1974, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855.

careful scrutiny of the *judicial process* by which the particular punishment was determined. Rather than an unjustified incursion into the province of the sentencing judge, this latter responsibility is, on the contrary, a necessary incident of what has always been appropriate appellate review of criminal cases. *See e. g.,* Townsend v. Burke, 1948, 334 U.S. 736, 741, 68 S. Ct. 1252, 92 L.Ed. 1690; Williams v. New York, 1949, 337 U.S. 241, 69 S. Ct. 1079, 93 L.Ed. 1337.

When it has been made to appear that longer sentences have been imposed by the courts because the defendants refused to confess their guilt and persisted in their claims of innocence we have vacated the sentences. United States v. Rodriguez, 5 Cir. 1974, 498 F. 2d 302; Bertrand v. United States, 5 Cir. 1972, 467 F.2d 901; *Cf.* United States v. Moore, 5 Cir. 1970, 427 F.2d 38, cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384; *Thomas, supra.* Until now we have had no occasion to address ourselves to the situation *sub judice,* where the trial court did not ask Rogers to directly confess his guilt, but rather to "sing" about others involved in the conspiracy. But we view this as a distinction without a difference. In United States v. Acosta, 5 Cir. 1974, 501 F.2d 1330, 1337–1338, the sentencing procedure employed by the district court was reviewed.

> Two sentencing hearings were held. At the first of these, the court gave Acosta to understand that if he would cooperate with the authorities by revealing his drug sources this would redound to his credit, recessing to permit him to do so. At the second hearing the Court, noting that the "Probation officer doesn't think you have shown any desire to co-operate," passed a heavy, though not a maximum, sentence.

> While I can only sympathize with the court's efforts to reach the drug heirarchy [sic] through Acosta, the record suggests the possibility that the court may actually have taken Acosta's refusal to cooperate into account in sentencing. If so, under such authorities as Thomas v. United States, 368 F.2d 941 (5th Cir. 1966) and United States v. Rodriguez, 498 F.2d 302 (5th Cir. 1974), the sentence should be vacated and a new sentence imposed without consideration of this refusal.

> \*  \*  \*  \*  \*  \*

> True it is that in both cases the court was urging the convicted defendant to acknowledge only his own guilt, but I am unable to see how Acosta could have implicated others without, at least tacitly, admitting his own complicity.

[Dissenting opinion, Gee, Circuit Judge. This point was not reached or considered by the majority of the panel.

We think that this result is mandated by Fifth Amendment considerations and we therefore decline to align ourselves with the differing views expressed in United States v. Vermeulen, 2 Cir. 1970, 436 F.2d 72, cert. denied, 1971, 402 U.S. 911, 91 S.Ct. 1390, 28 L.Ed.2d 653; United States v. Chaidez-Castro, 7 Cir. 1970, 430 F.2d 766, and Gollaher v. United States, 9 Cir. 1969, 419 F.2d 520, cert. denied 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424.

The judgment of conviction is affirmed. The sentence is vacated and the case remanded to the district court for further proceedings not inconsistent with this opinion.