UNITED STATES of America

v.

**Winfield L. ROBERTS a/k/a Win, Appellant.**

No. 78–1428.

United States Court of Appeals, District of Columbia Circuit.

Sept. 22, 1978.

Order Feb. 23, 1979.

Amended Judgment Feb. 23, 1979.

Rehearing En Banc Denied April 30, 1979.

Before WRIGHT, Chief Judge, and MacKINNON, Circuit Judge, and AUBREY E. ROBINSON, Jr.,* United States District Judge for the United States District Court for the District of Columbia.

## JUDGMENT

PER CURIAM.

This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia, and was argued by counsel.

On consideration thereof It is ordered and adjudged by this Court that the judgment of the District Court appealed from in this cause is hereby affirmed.

The duty of counsel is fully discharged without filing a suggestion for rehearing *en banc* unless the case meets the rigid standards of Federal Rule of Appellate Procedure 35(a).

## ORDER

PER CURIAM.

IT IS ORDERED, by the Court, sua sponte, that the Judgment previously entered in this proceeding on September 22, 1978 be, and it is hereby, vacated.

## AMENDED JUDGMENT

PER CURIAM.

This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia, and was argued by counsel. On consideration of the foregoing, it is

ORDERED AND ADJUDGED by this Court, that the judgment of the District Court appealed from in this cause, only insofar as it imposed a three-year special parole term on appellant, is vacated; but in all other respects that judgment is affirmed.

The duty of counsel is fully discharged without filing a suggestion for rehearing *en banc* unless the case meets the rigid standards of Federal Rule of Appellate Procedure 35(a).

On Suggestion for Rehearing En Banc

Before WRIGHT, Chief Judge and BAZELON, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB, and WILKEY, Circuit Judges.

## ORDER

PER CURIAM.

The suggestion for rehearing *en banc* filed by appellant Winfield L. Roberts, having been transmitted to the full Court and a majority of judges of the Court in regular active service not having voted in favor thereof, it is

ORDERED, by the Court, *en banc,* that appellant's aforesaid suggestion for rehearing *en banc* is denied.

Statement of BAZELON, Circuit Judge, as to why he voted for rehearing en banc.

Separate Statement by Circuit Judge MacKINNON.

Statement of BAZELON, Circuit Judge, as to why he voted for rehearing en banc.

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

The District Court in this case imposed substantial and consecutive sentences upon appellant because he refused to name the persons who had supplied narcotics which he distributed. A panel of this court affirmed appellant's conviction and sentence without opinion or memorandum. This appeal presents the question whether a trial judge may properly consider a defendant's failure to cooperate with law enforcement officials as an aggravating circumstance warranting imposition of an enhanced sentence. Because the panel failed to address this difficult issue which is critical to the fair administration of criminal justice, I voted to rehear this case *en banc.*

## I.

Appellant was indicted in a five count indictment including one count of conspiracy and four counts charging unlawful use of a telephone to facilitate the distribution of heroin.[1] In 1975, he pleaded guilty to the conspiracy count and received a sentence of four to fifteen years imprisonment, a three year special parole term, and a $5,000 fine. This court vacated appellant's guilty plea and sentence in 1977 because the Government had not fully disclosed the details of the plea agreement to the District Court.[2]

After several unsuccessful attempts to disqualify the original trial judge from the case on remand,[3] appellant pleaded guilty to two of the four counts of unlawful use of a telephone. Prior to sentencing, appellant filed a motion requesting that the sentences on the two counts run concurrently, which apparently is the customary practice in the District Court.[4] The prosecutor in his allocution, however, asked the sentencing judge to impose consecutive sentences of substantial weight. The judge responded by imposing consecutive sentences of one to four years on each count, plus a three year term of special parole.[5] The maximum penalty provided in the relevant statute is imprisonment for four years, a fine of $30,000, or both.[6] In the present appeal, a panel of this court affirmed by order. This petition for rehearing *en banc* followed.

## II.

The primary issue on appeal is simply whether a trial judge may properly rely upon the fact that a defendant refused to become an informer as a justification for imposing a more severe sentence. In our own circuit we have touched upon this issue without squarely confronting it on at least two prior occasions, and with differing re-

---

1. *See* 21 U.S.C. §§ 841(a), 846 (1976); *id.* § 843(b).

2. *United States v. Roberts,* 187 U.S.App.D.C. 90, 570 F.2d 999 (1977).

3. Appellant filed a motion for recusal in the District Court and a petition for writ of mandamus in this court.

4. *See* Brief for Appellant at 21 n.6; Brief for Appellee at 26 & n.15. During the sentencing proceedings, defense counsel indicated that he could find no case in this or any other circuit in which a defendant had received consecutive sentences for multiple counts of unlawful use of a telephone. *See* Sentencing Tr. at 4–5, reproduced in part in Appendix, *infra.* The prosecutor conceded the rarity of consecutive sentences on these counts but emphasized that the Government's somewhat extraordinary request was based primarily upon the defendant's refusal to identify his suppliers during the

plea bargaining process. *See id.* at 12–14, 16. Given both the thrust of the Government's allocution and the trial judge's specific admonishment from the bench during sentencing ("you had an opportunity and failed to cooperate with the Government," *id.* at 19), the record on appeal clearly demonstrates that the defendant's failure to cooperate was a significant factor affecting the sentence imposed. Whether it was the sole factor is irrelevant. The question is whether it is a *permissible* factor.

5. The District Court imposed a three-year special parole term which was not authorized by the statute, 21 U.S.C. § 843(b). The Government conceded that this part of appellant's sentence should be vacated. *See* Brief for Appellee at 24 n.13. The panel vacated the unauthorized condition by order dated February 23, 1979.

6. 21 U.S.C. § 843(c) (1976).

sults.[7] In *United States v. McCord*,[8] we suggested that a trial judge's consideration of defendant's failure to cooperate might necessitate vacation of sentence. Only a short time later, in *United States v. Liddy*,[9] a different panel concluded that that same factor was properly considered in imposing sentence. I think the present case offers an appropriate forum for *en banc* consideration of this troublesome issue.

The Government urges that *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), resolves the question whether the sentencing judge may properly consider the defendant's failure to cooperate with law enforcement officials. The Supreme Court held in *Grayson* that a sentencing judge, in fixing sentence within the statutory limits, may properly consider that a defendant gave false testimony during trial. The Court concluded that a defendant's willingness to commit the serious crime of perjury "may be deemed probative of his prospects for rehabilitation," *id.* at 52, 98 S.Ct. at 2617, and thus was a relevant factor in sentencing under the current rehabilitation model. Yet, at least without further explanation, *Grayson* does not appear to govern the situation in the present case. First, the Supreme Court emphasized that a defendant's deliberate choice to commit perjury—" 'a manipulative defiance of the law' "[10]—accurately indicated the likelihood of future transgressions and the degree to which defendant was " 'at war with his society' ". *Id.* at 51, 98 S.Ct. at 2616. Second, the Court rejected Grayson's constitutional arguments about "chilling" defend-

ant's right to testify by asserting that there is no protected right to testify untruthfully. In this case, by way of contrast, appellant Roberts' conduct was not similarly antagonistic. Appellant did cooperate with authorities with respect to the crimes charged in this indictment by inculpating both himself and his co-conspirator. Appellant balked only when asked to identify his powerful suppliers, fearing that to do so would endanger his life and possibly incriminate himself in additional conspiracies or criminal activities without benefit of immunity from prosecution. Whereas Grayson chose to lie when he had a legal duty to tell the truth, Roberts simply chose not to act in a situation in which he had no affirmative duty to act.[11] And whereas Grayson had no protected right to commit perjury, Roberts did have a constitutionally protected privilege against self-incrimination—a privilege that Congress intended to safeguard by requiring the Government to grant immunity before compelling self-incriminating testimony. *See* 18 U.S.C. § 6002 (1976).

The panel's apparent extension of the *Grayson* rationale without further elaboration is particularly disturbing here, for the result in this case permits the prosecution to increase its leverage in the "bargaining process" with the defendant by calling upon the considerable influence of the trial judge. The trial judge, whose impartiality is a cornerstone of our criminal justice system, may be tempted, under the guise of exercising discretion in sentencing to join forces with the prosecutor in securing the defendant's cooperation. Although the

---

7. Other circuits have addressed this or similar questions and have differed in their conclusions. *Compare United States v. Romos*, 572 F.2d 360 (2d Cir. 1978) (improper factor in sentencing); *United States v. Garcia*, 544 F.2d 681, 684–86 (3d Cir. 1976) (same); *United States v. Rogers*, 504 F.2d 1079, 1084–85 (5th Cir. 1974) (same); *with United States v. Chaidez-Castro*, 430 F.2d 766, 770–71 (7th Cir. 1970) (proper factor in sentencing).

8. 166 U.S.App.D.C. 1, 3 n.35, 509 F.2d 334, 346 n.35 (1974).

9. 397 F.Supp. 947 (D.D.C. 1975), *aff'd without opinion*, 174 U.S.App.D.C. 242, 530 F.2d 1094 (1976), *cert. denied*, 426 U.S. 937, 96 S.Ct. 2652,

49 L.Ed.2d 388 (1976). This court's disposition was set forth in an unpublished memorandum.

10. 438 U.S. at 51, 98 S.Ct. at 2616 (quoting *United States v. Hendrix*, 505 F.2d 1233, 1237 (2d Cir. 1974)).

11. Roberts' case differs from that in which a person has a duty to *testify*. *Compare In re Grand Jury Proceedings*, 509 F.2d 1349, 1350–51 (5th Cir. 1975) (proper to compel testimony before grand jury after grant of immunity), *with United States v. Rogers*, 504 F.2d 1079, 1084–85 (5th Cir. 1974) (improper to enhance sentence based on defendant's failure to cooperate with prosecution).

judge's consideration of the defendant's co-operation may be justifiable on other grounds, this practice should be reconciled with this court's earlier pronouncement that "the trial judge should neither participate directly in plea bargaining nor create incentives for guilty pleas by a policy of differential sentences . . . ." *Scott v. United States,* 136 U.S.App.D.C. 377, 387, 419 F.2d 264, 274 (1969) (opinion of Bazelon, C. J.); *see id.* at 279 (opinion of Wright, J.).

Before he was formally arrested, Roberts was told by the prosecutor "that the nature and extent of his cooperation would be determinative of the charges which could be brought against him." [12] When Roberts nonetheless refused to name his suppliers of narcotics, he was arrested and indicted accordingly. After his indictment Roberts again refused to cooperate. The Government could then have attempted to secure such information through a grand jury investigation, using the statutorily prescribed means for compelling testimony without violating defendant's privilege against self-incrimination.[13] Rather than following this course, however, the prosecutor allocuted

**12.** Government's Memorandum on Sentencing at 6 (filed in D.D.C. on Mar. 25, 1976).

In his separate statement, Judge MacKinnon notes that if judges in sentencing are not permitted to consider the extent of the defendant's cooperation with law enforcement officials, then prosecutors will simply take this factor into account in determining what charges to bring. In this case, however, the defendant's failure to cooperate was a factor affecting *both* the charges of the indictment and the sentence.

Just as the trial judge's extremely broad sentencing discretion has precipitated a spate of proposals calling for sentencing reform, the prosecutor's unbridled discretion in charging and bargaining with defendants has become the focus of increasing concern and debate within the field of criminal justice administration. Several commentators have suggested that the breadth of prosecutorial discretion must be curtailed in order to avoid the injustice engendered by the unfettered and generally unguided exercise of that awesome power. *See, e. g.,* K. Davis, Discretionary Justice: A Preliminary Inquiry 188–214 (1969); F. Miller, Prosecution: The Decision to Charge a Suspect With a Crime (1969); Alschuler, *Sentencing Reform and Prosecutorial Power: A Critique of Recent Proposals for "Fixed" and "Presumptive" Sentencing,* 126 U.Pa.L.Rev. 550, 563–77 (1978); National Advisory Commission on Criminal Justice Standards and Goals, Report on Courts (1973); Parnas & Atkins, *Abolishing Plea Bargaining: A Proposal,* 14 Crim.L.Bull. 101 (1978); Vorenberg, *Narrowing the Discretion of Criminal Justice Officials,* 1976 Duke L.J. 651, 681; White, *A Proposal for Reform of the Plea Bargaining Process,* 119 U.Pa.L.Rev. 439 (1971).

Recent proposals have included demands for the outright abolition of plea bargaining, legislative limits on the scope of the prosecutor's authority to bargain with defendants in certain situations, and the formulation of purely advisory and flexible internal guidelines on the prosecution's charging policy and practices. Other suggestions would require the prosecutor to publish reports, much like the one issued by the Watergate Special Prosecutor's Office, publicly disclosing how and why its discretion was exercised in a given case. *See* Report of the Watergate Special Prosecution Force 34–49 (Oct. 1975). In a similar vein, this court has emphasized that decisions such as whether and with what crime to charge the defendant "should be made in [the] sunlight, and not in the shrouded mist of unguided prosecutorial discretion." *Scott v. United States, supra,* 136 U.S.App.D.C. at 391, 419 F.2d at 278 (Opinion of Bazelon, C. J.). *Cf. Blackledge v. Allison,* 431 U.S. 63, 76, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

The precise question posed by this case is whether, in imposing sentence, the *trial judge* may consider the defendant's failure to cooperate as an aggravating circumstance. As Judge MacKinnon notes, however, the decisions of the *prosecutor,* no less than those of the judge, may in fact control the ultimate disposition of a case. Thus, if the defendant's failure to cooperate is an impermissible consideration in sentencing, then the question arises whether the prosecutor may properly invoke this consideration in exercising his discretion in charging and bargaining over dispositions.

**13.** 18 U.S.C. §§ 6002, 6003 (1976).

Judge MacKinnon implies that a grant of immunity under 18 U.S.C. § 6001 *et seq.* is analogous to the plea bargain, in that both compensate the defendant in exchange for cooperating with the State. But this characterization of immunity is inaccurate: unlike the plea bargain, immunity is not a "reward" for voluntary cooperation with law enforcement officials. Rather, immunity reflects congressional recognition that the Government cannot compel the cooperation of an unwilling defendant unless it safeguards his constitutional right against self-incrimination. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), recognized that the prosecutor may attempt to secure the defendant's voluntary cooperation by bargaining over indictments and pleas. If these efforts fail, however, Con-

for a substantial sentence in order either to induce cooperation after defendant's indictment and plea of guilty, or to punish the defendant for noncooperation. The sentencing judge's presentation from the bench of this bargain-versus-retaliation option seems to threaten the "relatively equal bargaining power" between the prosecution and defense that is crucial to the entire concept of plea bargaining.[14] This "announced policy of differential sentencing"[15] raises the serious danger that future defendants may be punished by the sentencing judge if they do not accept the prosecutor's offer during the period of "bargaining" over indictments and pleas. By allowing the judge to take sides with the prosecutor, we may be leaving defendants with a choice between accepting whatever offer is presented to induce them to talk, or being punished for exercising their right to remain silent.

## APPENDIX

### Sentencing Transcript

\*　　\*　　\*　　\*　　\*　　\*

[pp. 4–6]

MR. PALMER [Counsel for defendant]:

\*　　\*　　\*　　\*　　\*　　\*

Aside from the legal argument, Your Honor has a lot of experience in criminal cases, more than I do—I have a fair amount, also. I think it fair to say in my experience that when you have a plea on two counts such as this, Judges uniformly, in my experience at least, give concurrent sentences as a matter of course. In fact I know of no case in this courthouse, and I think Mr. McSorley and Mr. Connor can corroborate this if I am in error, or contradict it, in which a judge of this Court ever gave consecutive sentences for two phone

counts. In fact the case that I had once, Ramsey v. U. S., which went to the Supreme Court, Judge Smith, there too on several phone counts, gave concurrent sentences. I have checked all the advance sheets, and I don't know how many dozens of cases I've read, including the Federal Reporter. I have found no cases, as a matter of fact, in which any federal judge has ever given consecutive sentences for two or more phone counts.

I think based on that, based on the policy or usual procedure in this courthouse, we think it only fair, both under the law and the fact, that concurrent sentences be imposed, and I sincerely urge that.

All right. Now, without getting into that issue, the question of sentencing now comes up, and I really want to get into this a bit because of the Government's now famous allocution in the matter. We know that during the course of this investigation there was this phone tap directed at Boo Thornton for a couple of weeks. As a result of that I believe six search warrants were executed for gambling and narcotics as a result of Mr. Thornton's activities, people arrested, et cetera. At that time no one knew Winfield Roberts from anybody else.

During the course of the investigation, I think on three occasions a green Jaguar was seen in the vicinity. The girl that owned it, Cecelia Payne, came in and said, "Yes, it's my car, I loan it to my boyfriend. He's sitting outside." "Who's the boyfriend?" "Winfield Roberts."

The Government attorney and the other policemen were there, and there was a bit of disbelief over their good fortune. In any event Winfield Roberts comes in. Mr. Roberts made a statement to the police at the time.

---

gress, by authorizing a grant of immunity, has provided a means of compelling the defendant's cooperation without sacrificing his constitutional rights. Indeed, one might argue that the immunity statute prescribes the sole avenue of compelling such testimony, and that other means—such as threatening to enhance the defendant's sentence if he fails to cooperate— are impermissible.

**14.** *Parker v. North Carolina,* 397 U.S. 790, 809, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *accord, Bordenkircher v. Hayes,* 434 U.S. 357, 362, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

**15.** *Scott v. United States,* 136 U.S.App.D.C. at 387, 419 F.2d at 274.

Now, during the conversations alleged between this man and Thornton, the term "street" and "half street" were used relative to narcotics. All right. They asked Mr. Winfield Roberts about it, and he said, "Yes." I have a copy of his statement, which was given to me by Mr. McSorley. They asked him if he knew what was meant by the term "street" and "half street", because it was on the tape, and he said that "street" meant a $100 bag, and "half street" meant a $50 bag. He stated that when Boo was short on drugs he would make these deliveries to Boo in the amounts of 50 and $100 bags.

The target, Mr. Thornton, was indicted for gambling, I think, and narcotic violations, which he pled to some and the Government dismissed as to others. Mr. McSorley files his well-known allocution. I don't know if Judge Corcoran might have overreacted to it or what, but in any event he placed Mr. Thornton, the target, on probation in the matter.

Then we get here to Mr. Roberts. His case comes to Court, they indicate to him "If you testify against Thornton, or help us with who gave you the drugs, whatever, we'll go light on you." He says, "I wasn't involved in it," he refuses. He winds up with a substantial sentence, which he, Mr. Roberts, was somewhat surprised at, considering the course of events.

\*   \*   \*   \*   \*   \*

[pp. 11–19]

MR. McSORLEY [Prosecutor]: Your Honor, I would like to reply to some of Mr. Palmer's remarks.

The Government in this case, because we had filed previously a very lengthy allocution, felt no need to supplement it with any extended pleadings. Consequently we filed only a two-page document with our sentencing recommendation that the Court impose consecutive sentences, on the basis of his factual pleas of guilty to two counts of using a telephone to facilitate a violation of the Controlled Substances Act.

In short, we have asked Your Honor to impose sentences of 16 to 48 months on each count, consecutively, which would mean, of course, a total of 30 to 96 months. Because the defendant has already served 21 months in prison, and would get credit for time served, the net result, if the Court were to accept our recommendation, would be that the defendant, if he goes back to a federal institution, would have to serve 11 months from today, generally speaking, before he becomes parole eligible.

This sentence that we're asking for is much less severe than the one the Court imposed on him two years ago when it meted out a sentence of four years to 15 years. There the minimum time he would have had to serve was 48 months. In the instant case if the Court were to adopt our recommendation because of the time served it would be 11. So it would come out to be practically 16 months less time that he would end up serving if the sentence of two years ago were to be compared with the sentence we ask the Court to impose today.

Your Honor, Mr. Palmer has more or less found that the Government, by asking for consecutive sentences, is going against a rule of general usage, of customary practice in this courthouse. To some extent that is correct, because generally speaking in the pleas that I have handled in cases like this over the years, I haven't always been as harsh in asking for a particular sentence as I am in this case, and I would like to explain why the Government has taken this reason, so as not to appear as a Simon Legree.

Many, many months ago when this case first began and we had no idea of the identity of who it was who was using that green Jaguar automobile to ferry narcotics about the city, we subpoenaed the owner in, and that turned out to be Cecelia Payne, Mr. Roberts' girlfriend. She came in and she confirmed in fact that she was the owner, and the only person she ever let drive that car was her boyfriend, whose name was Winfield, and she told us as a matter of fact he was standing right outside my office in the corridor waiting for her.

I dispatched an officer to ask him to come in. Right then and there, not knowing the full import of the case, not knowing how deeply he was involved, the Government made an offer to solicit his cooperation in the case, because at that time we thought that Charles "Boo" Thornton, whom we did know, was a much more major figure in narcotics trafficking in this city than was Mr. Roberts. As events later transpired we were shown to be wrong, but we didn't know that at the time.

We solicited Mr. Roberts' cooperation to testify in the Grand Jury and at trial against Mr. Thornton. We promised him that the nature and extent of his cooperation would be made known. Suffice it to say what we offered him was a plea bargain on a silver platter, from which he would have emerged perhaps with some jail time, but with certainly a plea offer to a much less serious offense than what has ultimately transpired in the case.

Thereafter he began to cooperate, as Mr. Palmer noted. He told us what the terms "street" and "half street" meant. He told us how he delivered drugs in his girlfriend's Jaguar to Mr. Thornton. He told us a number of things which incriminated him. But when we asked him to go a step further and identify the person or persons from whom he was getting the drugs, and the location, and to lay out the conspiracy and identify other co-conspirators who were involved with them, he balked.

At that point, despite repeated entreaties to secure his cooperation to go that extra step, he adamantly refused. And of course what resulted was an indictment charging him with conspiracy, and only five telephone counts, though there were a maximum of 13 calls we could have indicted him for.

Throughout the long process that has occurred from June of 1975 when he first came into my office, up to today, he still has refused to cooperate.

So as we stand here today, as a prosecutor I am not in a position as I would be in many cases, in dealing with defendants like Mr. Roberts, and cases like this involving drugs, to come to the Court and say, Your Honor, we would ask you to take into account some extenuating and mitigating circumstances, that the defendant has cooperated by providing us with certain information. He has stonewalled it.

So we find it somewhat ironic for counsel to plead on Mr. Roberts' behalf, and to ask for probation, when a defendant over a course of many, many years, knowing what he faces, and knowing that we desired the information, still refuses to disclose it.

Mr. Roberts is 33 years old. He did this, from what we're able to discern, that is deliver drugs on call in a Jaguar automobile, worth many thousands of dollars and titled in his girlfriend's name, for only one interest, avarice, greed, money.

When this case arose way back in 1975 and the end of 1974, he was unmarried, had no children to support, no house payments to make, he lived with his girlfriend. The lease was in her name, the car was in her name. He had been unemployed for many years prior to 1975. He had been unemployed for many years since he had gotten out of Lorton. And yet, Your Honor, the life style that he was leading, the place where he was living, the car he was driving, the clothes he was wearing, the fact that he was going to Federal City College as a student, these things, Your Honor, instead of being taken into account as extenuating and mitigating circumstances, we think are appropriately to be considered as circumstances enhancing the seriousness of the offense and seriousness of the offender. It is not a defendant coming before the Court like Valjean in the Victor Hugo novel Les Miserables, where he stole bread because he had to eat. He did that for that reason. When Mr. Roberts had an opportunity to get a deal on very good circumstances, he threw it up in our face.

More than that, Your Honor, he is not a novice offender, he is not a neophyte. In 1968 in this courthouse he was charged in a 15 count indictment with multiple counts of bank robbery, and he went to trial and was convicted of all the counts which were pre-

ferred against him: UUV, one count; federal bank robbery, five counts; local bank robbery, five counts. And he was sentenced to one to five years on the UUV, and five to 15 on the bank robbery charges. And as the Court has heard, he served five and a half years at Lorton, and then he gets out.

Does he lead a law abiding life then? Is there anything today to make the Court or anyone else come to a reasonable conclusion that this man, with this background, is more likely to be law abiding from today forward than he was when he got out of Lorton five and a half years ago?

Your Honor, when you take into account the seriousness of this offense, and we do regard it as a serious offense, where he delivered heroin on call, where he himself was not an addict, where he had been unemployed, where he was a young, strong, employable, healthy human being, where he refused to assist the Government and thereby brought down on his head charges much more severe than would have been brought down, it's the Government's feeling that the appropriate sentence in this case is as we suggested.

Assuming the Court were to impose what we're asking, it is far less severe than what the Court imposed two years ago, and there have been, to counsel's way of thinking, no changed circumstances to support Mr. Palmer's recommendation for probation. We think that our recommendation, taking into account the offense, the Government efforts to have him cooperate, the lack of extenuating and mitigating circumstances, is an appropriate one, and therefore we would ask the Court to impose it.

THE COURT: Do you want to make a response, Mr. Palmer?

MR. PALMER: Yes, sir. The Government, it seems to me, is pretty well agreed that Mr. Roberts was essentially an errand boy in the matter, and they are really mad at him because—

THE COURT: I don't think they say that at all.

MR. PALMER: Well, insofar as the evidence is concerned, they have him delivering to Mr. Thornton drugs on three occasions, $100, $50, whatever, street, half street, that's the evidence. And the Government is indicating that they are mad at Mr. Roberts, they are seeking to get all this time because he didn't cooperate with them, and apparently that's what they wanted. He didn't do it, therefore he deserves to get the brunt of the time in this case, even though the target in the investigation, Mr. Thornton, got probation. And they are saying essentially, it seems, well, we've got this fellow, so let's get what we can from him. I think that's the thrust of the Government's argument.

Now, on the other point, the Government came and talked about the first sentence that Your Honor imposed. That was one of the very reasons we had filed these recusal motions, because it is difficult, as the Second Circuit said, for a judge once to have sentenced somebody, which we did cite the Maynard case which Your Honor did change that, but the Second Circuit Chief Judge Kaufman said once the judge has sentenced somebody it is tough to get it out of their mind and change the structure. Here we have a different type of plea.

The Government is arguing to Your Honor that very thing that we sought to avoid. They are saying Your Honor did this before, you gave him this amount of time, and now looking in this context it will be different, but have that firmly in your mind. So they are impressing Your Honor with the very point we sought to avoid. And I am sure, Your Honor, or I hope Your Honor will avoid that very argument, which is the basis of the recusal motion, not to be trapped into something Your Honor did before and bound by it, because the circumstances have changed now. Mr. Roberts is in a changed position, and I'll tell you why. Mr. McSorley says things haven't changed. I think they have changed dramatically, in the sense that as I indicated we are not here on behalf of a suppliant saying, Your Honor, give this man another break, maybe he has committed another offense and has done wrong, but put him on probation.

This man has actually served almost two years in a federal penitentiary. Atlanta is a maximum security prison. And I think in these circumstances he is really, to me, very frightened, and hasn't been going out at night, is seeking to straighten up his life. I think to send him back now would do more harm than good.

If he does mess up Mr. Connor and us will be back here, and Your Honor can impose what you want to, and I think under the circumstances, under all the facts in this case, looking at the broad view, we don't think we're being unreasonable.

Thank you.

THE COURT: Mr. Roberts, we have considered your case very carefully. We have noted again you were on parole from a bank robbery conviction, which you have had prior involvement with the law. In this case you were clearly a dealer, but you had an opportunity and failed to cooperate with the Government. Accordingly, it is the judgment of the Court that on each of these two counts you be sentenced to a term of one to four years, that those counts be consecutive, and in addition that there shall be a three-year term of special parole. We are not imposing a fine.

Thank you.

Separate Statement by Circuit Judge MacKINNON:

1. The premise of the foregoing statement is that "a defendant's failure to cooperate with law enforcement officials [was considered by the court] as an aggravating circumstance warranting imposition of an enhanced sentence." The transcript, however, does not support the assertion that Roberts obtained an "enhanced sentence for his failure to cooperate with law enforcement officials." The record in this respect states:

THE COURT: Mr. Roberts, we have considered your case very carefully. We have noted again you were on parole from a bank robbery conviction, which you have had prior involvement with the law. In this case you were clearly a dealer, but you had an opportunity and

failed to cooperate with the Government. Accordingly, it is the judgment of the Court that on each of these two counts you be sentenced to a term of one to four years, that those counts be consecutive, and in addition that there shall be a three-year term of special parole. We are not imposing a fine.

My complete familiarity with the facts of this entire case results from having written the opinion reversing the first conviction. The entire record reflects that Roberts is a very substantial drug distributor. His sentence of 2 to 8 years is a very light sentence for a drug *distributor* with a prior conviction for bank robbery. Thus, neither the length of the sentence nor the court's statement at sentencing indicated that Roberts obtained an ·"enhanced sentence." He obtained a sentence that is minimal for his type of continuing egregious conduct which involved a prior conviction for bank robbery. It is hard to imagine what lesser sentence than 2 to 8 years a court could adjudge for a convicted bank robber who subsequently is convicted of being a drug *distributor*.

2. In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) the Court observed that—

"one of [the] circumstances [surrounding a decision to plead guilty where only a jury could impose the death sentence] was the possibility of a heavier sentence following a guilty verdict after a trial."

397 U.S. at 749, 90 S.Ct. at 1469. It is significant that the Court made no adverse comment with respect to this situation where a more severe sentence was authorized if the defendant did not cooperate to the extent of pleading guilty.

As to compensating a defendant who cooperates with the Government the Court also remarked as to those who plead guilty:

"[W]e cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to

enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary." 397 U.S. at 753, 90 S.Ct. at 1471. Cooperating with the Government in law enforcement is an even greater benefit than merely pleading guilty. Congress has recognized this by authorizing the Government to grant up to complete immunity for testimony from those who refused to cooperate with the government. 18 U.S.C. § 6001 *et seq.* And Judge Heaney wrote for the Eighth Circuit, "[a]n agreement not to prosecute an accomplice who is cooperating in the conviction of others is recognized as a proper exercise of authority. A.B.A. Standards for Criminal Justice, The Prosecution Function § 3.9(b)(vii) (Approved Draft, 1971)." *United States v. Librach,* 536 F.2d 1228, 1230 (8th Cir.), *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). Whether these situations are viewed as facing a more severe sentence for not cooperating or a more lenient sentence for cooperating, the situation is merely two sides of the same coin.

3. If judges were no longer permitted to consider a defendant's cooperation with law enforcement officials, then prosecutors would take that factor into account by pressing the more severe charges for those who refuse to cooperate and reducing the charges of defendants who do cooperate. R. Dawson, *Sentencing: The Decision As To Type, Length, and Conditions of Sentence* 177 (1969).

4. It is also surprising that the trial court's action in sentencing a major drug distributor, which merely referred to his prior conviction for bank robbery and his failure to cooperate with the government, is here questioned. *Cf., United States v. McCord,* 166 U.S.App.D.C. 1, 13–15, 509 F.2d 334, 346–48 (1974), where the judge during sentencing stated very precisely that "full co-operation with the prosecution might result in lighter sentences." *Id.,* 166 U.S.App.D.C. at 14, 509 F.2d at 347. And he was referring to cooperation in prosecuting others.