UNITED STATES of America,
Plaintiff-Appellee,

v.

Ivar Q. BLACKNER,
Defendant-Appellant.

No. 82–1292.

United States Court of Appeals,
Tenth Circuit.

Nov. 14, 1983.

Edward T. Wells, Salt Lake City, Utah (Lowell V. Summerhays and Victor M. Perri of Summerhays, Runyan & Perri, Salt Lake City, Utah, were also on the brief), for defendant-appellant.

Tena Campbell, Asst. U.S. Atty., Salt Lake City, Utah (Brent D. Ward, U.S. Atty., Salt Lake City, Utah, was also on the brief), for plaintiff-appellee.

Before HOLLOWAY, DOYLE and SEYMOUR, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant Ivar Q. Blackner timely appeals the order denying his motion to withdraw his guilty pleas and his motion to withdraw his waiver of jury trial, and the judgment and sentence entered on the pleas. Blackner contends, *inter alia,* that his motion to withdraw his guilty pleas should have been granted because (1) the prosecution failed to inform the district court of the existence and terms of the plea bargain agreement he had, and (2) Blackner was not informed of the maximum sentence provided by law for pleading guilty to the crimes charged. We agree with his first proposition and must vacate the judgment and order, and remand.

I

On December 16, 1981, Blackner was indicted on two counts of distributing cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). Blackner waived his right to a jury trial on February 11, 1982. On February 16, the day on which

his trial was to begin, Blackner's attorney announced that Blackner wished to change his pleas and plead guilty to both counts. Blackner and his attorney signed a "Statement by Defendant in Advance of Plea of Guilty," I R. 32–34, stating that there was no plea agreement and no agreements or representations had been made about his sentence. The court advised defendant in detail of his rights such as his right to trial by jury, representation by counsel, the presumption of innocence and the like. The court inquired whether there was an arrangement to propose a dismissal of one count and was advised by the Government that there was no such agreement and that the plea would be "to the charges in the indictment." II R. 2–3. The court accepted the pleas, finding that "the pleas were entered knowingly and understandingly." II R. 20; I R. 31.

On February 22, 1982, Blackner filed a motion to withdraw his guilty pleas and a motion to withdraw his waiver of jury trial. I R. 36. After a hearing the district judge denied the motions. On March 31 Blackner was sentenced on count I to imprisonment for a term of two years and to a special parole term of three years. Imposition of sentence on count II was suspended and the defendant was placed on probation for a period of two years, such period of probation to be consecutive to the sentence imposed on count I, including the parole and special parole term of supervision. I R. 59. This appeal followed.

## II

Blackner contends that his motion to withdraw his pleas should be granted because the prosecution failed to inform the court of a plea bargain agreement as required by Rule 11, Federal Rules of Criminal Procedure. Defendant argues that there was an agreement that the United States Attorney would not seek the maximum sentence at the time of sentencing or take any position with respect to sentencing, if defendant did plead guilty. Appellant's Brief at 4.

The Government argues, *inter alia,* that this issue was not presented in the district court by defendant's written motion to withdraw his guilty pleas or at the hearing on the motion, and should therefore not be considered on appeal. Brief of Plaintiff-Appellee at 7–8. We must reject this contention. While this specific claim was not asserted in the motion, the facts about this issue were clearly developed at the hearing on the motion to withdraw the guilty pleas, and at the other hearings shortly before and after that hearing. In fact, defendant's attorney brought out the fact that even if the agreement by the Government not to take any position on sentencing if defendant pled guilty to both counts was not "much of a deal," it nevertheless can be construed as an agreement under the criminal law. III R. 30–31. In any event, the claim that the agreement was not fully disclosed to the court raises a serious question of violation of mandatory provisions of the criminal procedural rules and must be considered as a plain error or defect affecting substantial rights. Fed.R.Crim.P. 52(b). Hence we turn to the merits of the issue.

For a resolution of this issue the record is crucial. On February 16, the case came on for trial and defendant then moved for permission to change his pleas to guilty. II R. 2. At that time the trial judge made a thorough inquiry regarding the voluntariness of Blackner's change of pleas to guilty as required by Rule 11. In connection with the specific requirement concerning disclosure of the existence of any plea bargain agreement, the trial judge also questioned Blackner and the following colloquy occurred:

THE COURT: Now, if there are those individuals in law enforcement who feel that the circumstances in your case are such that they would make a recommendation or make a—give information to the pre-sentence agent, the probation agent—I don't know if this is what you have in mind. But, whoever it is, for whatever purpose, that will be part of the report and the circumstances there will be set out.

But, at present, *you have no right or expectation to believe that what is represented there will be in any particular form, unless it has been so represented to you at this time—in which event, we should hear what it is.* Have I made myself clear?

THE DEFENDANT: Yes, Sir.

THE COURT: *So, at this point, you have no assurances.* You have nothing that you could rely upon that would bear upon, presently, any kind of understanding or commitment or agreement as to what the sentence may be. Do you understand that?

THE DEFENDANT: *Yes, Sir.*

THE COURT: In other words, you are fully subject to whatever sentence the Court believes is proper, after considering a pre-sentence report arrived at in the usual way and after hearing what your counsel may have to say and hearing what the government's counsel may have to say. Do you understand that?

THE DEFENDANT: Yes, Sir.

II R. 12–14. (Emphasis added).

As noted, the court found the guilty pleas were made knowingly and understandingly and accepted them at the February 16 hearing. As will be developed below, the judge was misinformed at that time to the extent that he was not told of an agreement by the Government with defendant that no statement would be made by the prosecuting attorneys on the sentence to be given. In fact, the "Statement By Defendant In Advance Of Plea Of Guilty," typed in the United States Attorney's office, III R. 20, 34, and then signed by defendant and his counsel, was given to the judge after the judge made inquiry about such a statement. The statement said that "[t]he only plea agreement which has been entered into with the government is: No agreement." I R. 33.

Six days after the guilty pleas were entered, defendant moved to withdraw his pleas and his waiver of trial by jury, through new counsel. He alleged in his motion that he was ill and confused when the pleas were entered; that he had been told one count would be dismissed in exchange for his guilty plea to the other count; that he had been assured there would be no "pen time"; and that defendant felt he was not guilty of the charges against him. I R. 36–37. Defendant's affidavit supporting the motion stated that he had been told the second count would be dismissed in exchange for his guilty plea to the first count; that he was not informed until immediately before going in to make his plea that the second count was not going to be dismissed; that his attorney said the best thing he could do was plead to both counts; that he had been informed there would be no "pen time" and he was not aware that sentencing was left fully to the judge and that there was no control over it by any of the attorneys involved. He said he is innocent of the charges against him. I R. 39. In this connection we note that at the entry of his guilty pleas he had admitted his guilt to both counts on the stand. II R. 15–16.

Additional critical facts were developed at the February 25 hearing on Blackner's motion to withdraw his plea. Mr. Van Sciver, the attorney who represented Blackner when he appeared for trial and changed his pleas, gave the following testimony when called as a witness by the Government:

We met with the U.S. Attorney. We met in your office. We have met with narcotics agents and the deal that we thought would develop had not because the agent felt that the information which he gave was not new or worthwhile. Even after—prior to entering the plea we even had further discussions. *You, at least, committed to not taking a position at the time of sentencing if we were to plead.*

The agent suggested that positive representation about cooperation would be found in the presentence report at the time of sentencing if he were to cooperate after the entry of the plea and up until the time of the sentencing. And whether that is a good way to go no one knows. It seems to me, in light of the

overwhelming evidence, a way to approach resolution of the problem.

Q Mr. VanSciver, at the time that you were advising Mr. Blackner, discussing with Mr. Blackner his change of plea did he appear to understand what you were saying to him?

A Well, Mr. Blackner is an intelligent man. I think he understands. I sure hope so. I don't intend to play any games.

MRS. CAMPBELL: I have no further questions.

III R. 23–24. (Emphasis added).

Later at the same February 25 hearing during cross-examination by defendant's counsel, Mr. VanSciver testified as follows:

Q As I understand, to a certain extent, then, that there were representations made on the 16th immediately prior to the hearing to the effect that the Government would not make any representations at the sentencing hearing one way or the other?

A *If he were to plead to both counts they wouldn't take a position.* If he were to plead and cooperate with the drug enforcement agents, perhaps there would be a much more favorable representation. But, there was no commitment.

Q There was no commitment that they would not take a position?

A Well, *there was a commitment from the U.S. Attorney that they would not—from Mrs. Campbell that she would not take a position one way or the other if he pled to two counts on the morning of the trial.*

Q And did you tell him that?

A Sure.

Q Was that a—

A We all—

Q Was that a deal you arrived at?

A I don't know that that is even a deal.

Q *Well, she committed that, didn't she?*

A *Yes. But, I don't think that is much of a deal.*

Q *Well, I will agree with that. But, it can be construed as a deal imposed on the part of criminal law?*

A Yeah.

III R. 30–31. (Emphasis added).

In response to this testimony there was no testimony or denial by the Government of the understanding that the Government would take no position at the sentencing. In closing arguments the Assistant United States Attorney essentially stated that Blackner was a very intelligent man who knew what he was doing, that his rights he was giving up by pleading guilty were fully explained to him by the court and understood by him, and that the court should allow the guilty pleas to stand. III R. 34–35.

At the conclusion of the February 25 hearing the district judge announced his ruling. He reviewed in the record the details of the transcript of the hearing on the change of pleas, concluded that the pleas were voluntary, and denied the motion to withdraw the guilty pleas and the waiver of trial by jury. The judge did not, however, make any finding or statement regarding the evidence that the Government had agreed that it would take no position on sentencing if defendant pled guilty to both counts.

At the March 31 sentencing, after the trial judge announced Blackner's sentence and referred to a request for a stay of the sentence of confinement, the Assistant United States Attorney stated:

MISS CAMPBELL: *No, Your Honor. We do not have anything to say on that issue. It was part of our agreement with Mr. Blackner's former attorney that we wouldn't say anything at the time of sentencing.* (Emphasis added).

IV R. 14.[1] We note that the district judge did not have this information, which was

---

1. The Government, of course, was bound by its constitutional duty to fully comply with its agreement, as it did. *See Santobello v. New* *York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

**708**

furnished on March 31, when he accepted the guilty pleas on February 16.

■ In short, there was clear testimony of an agreement that the Government would take no position at the time of sentencing if defendant pled guilty to both counts, there was no denial of this testimony by the Government, and indeed there was an express admission on March 31 of that agreement by the Assistant United States Attorney who made the agreement. While it was not as favorable an agreement as one to dismiss some charges in connection with a guilty plea, there was an agreement by the Government of one specific type contemplated by Rule 11(e)(1)(B). In any event, "[t]he parties are required to inform the trial judge of all the promises that have been made, not only those which they happen to consider important." *United States v. Roberts,* 570 F.2d 999, 1007 (D.C.Cir.1977).[2] Fed.R.Crim.P. 11(e)(5) unambiguously mandates that, except for good cause shown, notification to the court of the existence of the plea agreement "shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court." Despite the careful inquiries by the district judge, the parties failed to advise the court of the agreement, in violation of a duty resting on both the prosecuting attorney and the defendant. *Roberts,* 570 F.2d at 1007.

■ The failure to disclose the agreement flawed the proceedings for several reasons. First, a full disclosure of all

understandings is essential for the court's determination whether to accept a guilty plea; it is particularly needed for the judge to make "the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). We were there cautioned by the Supreme Court even before the adoption of the strict amendments involved here that Rule 11 "is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination." *Id.* 394 U.S. at 465, 89 S.Ct. at 1170. We agree with the Court of Appeals of the District of Columbia that "[t]here is no standard short of requiring total disclosure of all material details of plea agreements that can reliably guarantee that guilty pleas are knowing and voluntary and fully understood by the parties themselves." *Roberts,* 570 F.2d at 1007.

■ Second, a full disclosure of all understandings is also essential for the court's determination of the type of agreement made so that required advice may be given to the defendant before the plea is entered. As noted, the agreement made here was of the type specified by Rule 11(e)(1)(B) by which the Government agrees to

> make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court.[3]

---

2. The United States Court of Appeals, District of Columbia Circuit, vacated the judgment of conviction and remanded the case. The case was once again appealed and the Court of Appeals vacated the judgment appealed from the District Court only insofar as it imposed a three-year special parole term on appellant but affirmed the judgment in all other respects. *See United States v. Roberts,* 600 F.2d 815 (D.C.Cir.1979). The Supreme Court granted certiorari and affirmed the judgment of the Court of Appeals. The question on appeal to the Supreme Court was "whether the District Court properly considered, as one factor in imposing sentence, the petitioner's refusal to cooperate with officials investigating a criminal conspiracy in which he was a confessed participant." *Roberts v. United States,* 445 U.S. 552,

553, 100 S.Ct. 1358, 1360, 63 L.Ed.2d 622 (1980).

3. As the Advisory Committee Notes to the Federal *Rules of Criminal Procedure* state,

there are four possible concessions that may be made in a plea agreement. First, the charge may be reduced to a lesser or related offense. Second, the attorney for the government may promise to move for dismissal of other charges. Third, the attorney for the government may agree to recommend or not oppose the imposition of a particular sentence. Fourth, the attorneys for the government and the defense may agree that a given sentence is an appropriate disposition of the case.

*See* 3A C. Wright, *Federal Practice and Procedure: Criminal,* App., p. 455 (2 ed. 1982).

By agreeing not to "say anything at the time of sentencing," IV R. 14, the United States Attorney, in effect, agreed not to oppose the defendant's requests for no sentence of imprisonment, IV R. 5, and for placement in a release program, IV R. 6, which requests were important to the defendant here, and were made by him through his counsel. Moreover, implicit in such an agreement was the commitment that the Government would not recommend a maximum sentence, an understanding which "seems by no means to be of negligible significance." *Roberts,* 570 F.2d at 1007; *see Santobello v. New York,* 404 U.S. 257, 258, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971) (The prosecution agreed to make no recommendation as to the sentence).

█ Fed.R.Crim.P. 11(e)(2) provides that [i]f the agreement is of the type specified in subdivision (e)(1)(B), *the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea.* (Emphasis added).

Here the court did discuss with the defendant that he had no "assurances." However, because the court was not informed of the Government's agreement not to "say anything at the time of sentencing," the trial judge did not advise the defendant that if the court did not accept the *defendant's requests* as to sentencing, the defendant nevertheless had no right to withdraw his pleas. Thus the court's lack of information when the pleas were being accepted resulted in the omission of such advice, which Rule 11(e)(2) mandated before the pleas could be accepted.

█ The fact that during questioning the defendant himself "denied that there had been any prosecutorial promises to induce the plea does not estop him from seeking to withdraw his plea." The defendant's "personal responses to Rule 11 inquiries ... do not foreclose further investigation into the full terms of the plea bargain." *Roberts,* 570 F.2d at 1007. If the rule were otherwise, the strong policy favoring full disclosure of plea agreements could be emasculated by boilerplate answers and assurances that there were no agreements connected with the plea.

We further note that in the proceedings below and in its appellate brief the Government has not claimed that any prejudice to it would result from the defendant's being allowed to withdraw his pleas and stand trial.

In view of the conclusion we reach on the basis of the violation of Fed.R.Crim.P. 11 we need not discuss defendant's other contentions.

### III

In sum, we conclude that defendant should have been permitted to withdraw his guilty pleas and have a trial on the charges against him, due to the infringement of Rule 11. *See McCarthy v. United States,* 394 U.S. 459, 471–72, 89 S.Ct. 1166, 1173–74, 22 L.Ed.2d 418 (1969). The record clearly shows a violation of Fed.R.Crim.P. 11(e)(5) in that the district court was not notified of the agreement that the Government would not take a position on sentencing if the defendant pled guilty to both counts—an agreement coming within the terms of Rule 11(e)(1)(B). This defect resulted in the court not advising the defendant, as required by Rule 11(e)(2), that if it did not accept defendant's requests on sentencing, which were made here and unopposed, the defendant nevertheless had no right to withdraw his pleas. The lack of notice of the agreement thus prevented such discussion with the defendant and consideration by the court of all the circumstances underlying the pleas.

Moreover the defendant moved promptly and before sentencing to withdraw his pleas and his waiver of jury trial, asserting his innocence, and the Government showed no prejudice to it which withdrawal of the pleas and the waiver of jury trial would bring. In these circumstances we must vacate the judgment of convictions and sentences, and the order denying the motions to withdraw the guilty pleas and waiver of jury trial, and remand the case for further proceedings in accord with this opinion.